Hillsborough
No. 85-121

JOSEPH M. ELLIS AND DONNA ELLIS

v.

ROBERT C. MORRIS, INC.

July 29, 1986

*Davis, Braucher & Kowal*, of Boston, Massachusetts, and *Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Richard W. Schwartzman* on the brief and orally), for the plaintiffs.

*Runyon and Sweeney P.A.*, of Peterborough (*Walter H. Sweeney* on the brief and orally), for the defendant.

*Craig, Wenners & McDowell*, of Manchester (*James W. Craig* on the brief and orally), for the Association of New Hampshire Homebuilders, as *amicus curiae*.

KING, C.J. This appeal arises from an order of the Trial Court (*Wyman*, J.) granting the defendant's motion for summary judgment. The issue presented is whether a subsequent purchaser of a home may sue the builder for damages based on the builder's negligent performance of the original construction contract. We hold that a builder has no tort obligation to subsequent purchasers of a house to prevent economic harm resulting from defects in the house. A purchaser's action for damages for the cost of remedying defects sounds in contract; accordingly, in the absence of privity of contract between the purchaser and the builder, no action can be maintained.

In 1978, the defendant completed construction of a single-family residence in Peterborough. The clapboards installed on the house were selected by Dennis Balog, the original owner. Balog took possession of the house in January 1978, but sold the house to his employer before the year's end. His employer in turn sold the house to the plaintiffs in February 1979. The contract between the seller and the plaintiffs provided that the "purchasers agree to accept the premises . . . in 'as is' condition."

The plaintiffs took possession of the house in February 1979. Thereafter, they observed that the clapboards were warping and cracking. The plaintiffs complained to the defendant, but the defendant refused to repair the siding. The plaintiffs then hired another contractor to replace the clapboards, and in March 1983 instituted this action, alleging that the clapboards were defective and that the defendant had failed to install them in a workmanlike manner.

The complaint may be read as raising both a claim in contract, for breach of implied warranty of habitability, and a claim in tort, for negligence. At oral argument, the plaintiffs waived the implied warranty issue, acknowledging that there was no privity of contract between themselves and the defendant. They contend, however, that the lack of privity should not bar their negligence action. According to the plaintiffs, a subsequent homeowner is entitled to the same protection as the original purchaser of a house because latent defects, such as defective clapboards, should be known to the builders who handle the materials but are difficult for potential purchasers to detect. Thus, they conclude, the defendant contractor

had a duty of ordinary care to all foreseeable parties, including subsequent purchasers of the house, to ensure that the clapboards were properly installed and were not defective.

In their brief, the plaintiffs rely almost exclusively on cases from other jurisdictions that extend an implied warranty of habitability to subsequent purchasers, *see, e.g., Richards v. Powercraft Homes, Inc.*, 139 Ariz. 242, 678 P.2d 427 (1984), or permit a subsequent purchaser to sue the builder for negligent performance of the original construction contract that results in defects latent at the time of purchase, *see, e.g., Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041 (Colo. 1983). *See generally* Annot., 10 A.L.R. 4th 385 (1981). These courts have been motivated in large part by two policy considerations. First, neither the initial nor the subsequent purchaser can effectively inspect the underlying construction or discover latent defects before purchase. Second, in an increasingly mobile society, builders can reasonably foresee frequent changes in home ownership. *See, e.g., Cosmopolitan Homes, supra* at 1045. Accordingly, courts have sought to rectify the perceived unfairness that arises when a subsequent homeowner, deemed no less worthy of protection than the initial purchaser, is denied recovery because of the lack of privity of contract with the builder.

Although we are cognizant of the problems a subsequent homeowner may face, we decline to follow the example of these cases and thereby depart from the traditional principles upon which contract and tort actions are predicated. Two decisions from other jurisdictions are instructive in this regard. In *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 441 N.E.2d 324 (1982), the plaintiff, a subsequent purchaser of a home, alleged that the chimney and adjoining brick wall were separating from the house and that the basement wall was cracked. The Supreme Court of Illinois permitted the plaintiff to sue the builder for breach of implied warranty of habitability and fitness, stating:

> "The warranty of habitability is a creature of public policy. It is a judicial innovation that has evolved to protect purchasers of new houses upon discovery of latent defects in their homes. While the warranty of habitability has roots in the execution of the contract for sale, we emphasize that it exists independently. Privity of contract is not required."

*Id.* at 183, 441 N.E.2d at 330 (citations omitted); *cf. Woodward v. Chirco Const. Co., Inc.*, 141 Ariz. 514, 687 P.2d 1269 (1984) (stating that the imposition by law of an implied warranty of habitability did not transform the duty arising out of the contract into one based

on tort principles alone, but that privity of contract was not required to maintain the action).

We agree with the dissenting justice in *Redarowicz*, who stated that allowing an action for breach of implied warranty in the absence of privity of contract was tantamount to imposing strict liability in tort. 92 Ill. 2d at 187, 441 N.E.2d at 331–32 (Ryan, C.J., dissenting). Under New Hampshire law, an implied warranty of habitability runs from the builder to the first owner of a residence. *See Norton v. Burleaud*, 115 N.H. 435, 436, 342 A.2d 629, 630 (1975). Implied warranties, however, "are imposed only in favor of a party to whom the defendant has already manifested an intent to be bound." Note, *Economic Loss in Products Liability Jurisprudence*, 66 COLUM. L. REV. 917, 948 (1966). Warranty liability is "an incident to the core of consent—the contract itself." *Id.* at 949. It remains a matter of contract and, as such, is subject to the requirement of privity. *See Elliott v. Lachance*, 109 N.H. 481, 484, 256 A.2d 153, 155 (1969).

Plaintiffs who lack privity of contract but would otherwise have a claim for implied warranty may under certain limited circumstances sue under a theory of strict liability in tort. *See Elliott supra*. We have recently emphasized that only the user or consumer of an unreasonably dangerous product, for whom proof of negligence would be practically impossible, may proceed on a theory of strict liability. *See Bagley v. Controlled Environment Corp.*, 127 N.H. 556, 560, 503 A.2d 823, 825–26 (1986). Because a homebuyer ordinarily would not have that degree of difficulty proving negligence on the part of the builder, we decline to extend the remedy. Accordingly, a subsequent purchaser cannot sue for breach of implied warranty in the absence of privity of contract with the builder.

The second case we consider is *Cosmopolitan Homes, Inc. v. Weller*, 633 P.2d 1041 (Colo. 1983). In *Cosmopolitan Homes*, the plaintiffs were the fourth owners of a house built by the defendants in 1973. After the plaintiffs bought the house in 1977, the foundation began to crack, and the plaintiffs sued the builders for negligence. The Supreme Court of Colorado stated that the absence of privity of contract between the plaintiffs and the builders did not bar the negligence claim:

> "[T]he 'contractual obligation is not the touchstone of civil liability in tort. It is only the matrix from which an independent tort obligation may arise.' A contractual obligation gives rise to a common law duty to perform the work subject to the contract with reasonable care and skill. The

fact that a contract may have existed between the builder and the original purchaser of the home does not transform the builder's contractual obligation into the measure of its tort liability arising out of its contractual performance."

*Id.* at 1043 (citations omitted). The court concluded that foreseeability determined the scope of the duty owed and that the builders owed a duty to the plaintiffs to prevent defects in workmanship such as structural deficiencies. *Id.* at 1045.

 We agree that the absence of privity of contract does not necessarily bar a negligence action that arises from improper performance of a contract. *See Robinson v. Colebrook Savings Bank*, 109 N.H. 382, 384–85, 254 A.2d 837, 839 (1969). But we disagree with the conclusion of the Supreme Court of Colorado that the builders' contractual duty to give the homebuyers the benefit of their bargain is also a tort obligation owed the buyers; namely, a duty to exercise care in building the house so that no defects exist. *See Cosmopolitan Homes*, 663 P.2d at 1050 (Rovira, J., dissenting). Facts constituting a breach of contract may also constitute a breach of a duty owed by the defendant to the plaintiff independent of the contract. *Lawton v. Great Southwest Ins. Co.*, 118 N.H. 607, 613, 392 A.2d 576, 580 (1978); *Dunn & Sons, Inc. v. Paragon Homes of New Eng., Inc.*, 110 N.H. 215, 217, 265 A.2d 5, 8 (1970). Yet "a breach of contract standing alone does not give rise to a tort action." *Lawton supra.* Thus, where improper conduct in the performance of a contract is alleged, it is necessary to identify whether the plaintiff has an interest protected by tort law or one enforceable only in contract.

In support of the proposition that a builder has a tort duty to protect all foreseeable third parties from injury due to its negligent work, the plaintiffs cite *Russell v. Whitcomb*, 100 N.H. 171, 121 A.2d 781 (1956). In that case, the defendant excavated a portion of a public highway for the City of Keene. The plaintiffs claimed that the excavation caused the walls and basements of the plaintiffs' buildings to crack. We held that "independent building and construction contractors should be held to a general standard of reasonable care for the protection of third parties who may be foreseeably endangered by the contractor's negligence, even after acceptance of the work [by the owner or employer]." *Id.* at 173, 121 A.2d at 782. Simply stated, a tort obligation ran to the plaintiffs to prevent the property damage alleged.

 The property damage caused by the defendant in *Russell* is different, however, from the type of harm alleged in the present case. The plaintiffs' claim does not involve property damage *per se.*

Rather, the writ alleges economic loss resulting from the defendant's failure to properly perform a contractual obligation. Economic loss has been defined in the products liability context as the "diminution in the value of a product because it is inferior in quality." Comment, *Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages—Tort or Contract?*, 114 U. PA. L. REV. 539, 541 (1966). When a defective product accidentally causes harm to persons or property, the resulting harm is treated as personal injury or property damage. But when damage occurs to the inferior product itself, through deterioration or non-accidental causes, the harm is characterized as economic loss. Note, *Economic Loss in Products Liability Jurisprudence*, 66 COLUM. L. REV. 917, 918 (1966). In general, persons must refrain from causing personal injury and property damage to third parties, but no corresponding tort duty exists with respect to economic loss. *Id.* at 944. Accordingly, in *Russell*, the plaintiffs' property damage was compensable in tort independent of the tortfeasor's contract with the City. No similar duty runs from the defendant to the plaintiffs in the present case because the harm alleged is economic loss.

Our decision in *Morvay v. Hanover Ins. Companies*, 127 N.H. 723, 506 A.2d 333 (1986) is in accord. In *Morvay*, we held that when an insurance company hires someone to investigate a policyholder's claim, the investigator has a duty to the insured to refrain from negligent conduct that causes financial harm to the insured. *Id.* at 725, 506 A.2d at 335. No privity of contract existed in *Morvay* between the investigator and the insured. Nonetheless, the relationship between them was such that the insured would foreseeably be affected by the investigator's work. Therefore, we permitted the plaintiff to sue in tort when financial loss occurred.

We find it inappropriate to extend a similar cause of action in the present case. The construction contract between the defendant and the original owner contemplated no services to third parties, as did the contract in *Morvay*. Nor was it foreseeable that the plaintiffs would be affected by the builder's work. Where the potential plaintiff is identifiable, and injury to that plaintiff is therefore actually foreseeable, a duty of care to prevent economic or other loss may extend to that plaintiff. *See Morvay supra.* To allow any subsequent purchaser of a home to sue the builder in tort, however, would be to subject a builder to the specter of unlimited liability. Therefore, although the law traditionally accords any reasonably foreseeable party a remedy for personal injury or property damage, we hold that no similar remedy exists in tort for economic loss in the circumstances of this case.

The interest in freedom from economic loss and the corresponding obligation to prevent economic loss are best characterized in terms of contract rather than tort. Contract obligations are "based on the manifested intention of the parties to a bargaining transaction." W. KEETON, D. DOBBS, R. KEETON & D. OWEN, PROSSER AND KEETON, ON THE LAW OF TORTS § 92, at 656 (5th ed. 1984) (hereinafter cited as PROSSER & KEETON). "The purpose of the contract duty is to secure the receipt of the thing bargained for . . . ." *Dunn*, 110 N.H. at 217, 265 A.2d at 8. Tort obligations, on the other hand, are duties "imposed by law on policy considerations to avoid some kind of loss to others," independent of promises made. PROSSER & KEETON *supra*. "[W]here mere deterioration or loss of bargain is claimed, the concern is with a failure to meet some standard of *quality*. This standard of quality must be defined by reference to that which the parties have agreed upon." *Crowder v. Vandendeale*, 564 S.W.2d 879, 882 (Mo. 1978) (stating that a subsequent purchaser of a home cannot sue the builder in tort for loss of bargain).

In *Roberts v. Richard & Sons, Inc.*, 113 N.H. 154, 304 A.2d 364 (1973), the plaintiff sued under theories of contract and negligence, seeking the cost of remedying defects in a garage and showroom built by the defendant for the plaintiff pursuant to a written contract. We indicated that the count in tort was essentially the same as the count in contract because it "ask[ed] that the plaintiff be placed in the same position as he would have been had the defendant properly performed the contract. It [was] an action for breach of contract not tort." *Id.* at 156, 304 A.2d at 366. Similarly, in *Antoniou v. Kenick*, 124 N.H. 606, 474 A.2d 566 (1984), a homeowner alleged breach of contract and negligence by the contractor who built her home, seeking damages for the cost of remedying various construction-related defects in the home. We reaffirmed our holding in *Roberts* that the defendant's conduct was actionable in contract rather than in tort. *Id.* at 610, 474 A.2d at 568. In *Roberts*, as in *Antoniou*, the builder had a contractual obligation to give the owner, for whom the building was constructed, the benefit of his or her bargain, but had no duty in tort to achieve the same result.

In this case, defects allegedly caused by the defendant's negligence resulted in a diminution of the value of the house. Nonetheless, the obligation to build the house in a workmanlike manner existed only because of the manifested intent of the defendant and the original owner. *See* PROSSER & KEETON, *supra* § 92, at 656. No contractual obligation ran to the plaintiffs, who did not deal with the defendant. Accordingly, the plaintiffs cannot sue for the builder's failure to give them the benefit of the bargain.

There being no tort obligation to prevent economic loss in this case and no contract between the plaintiffs and the defendant, we uphold the decision of the trial court granting summary judgment to the defendant.

*Affirmed.*

All concurred.