Strafford
No. 87-006

LARRY C. LEMPKE & a.

v.

BRIAN DAGENAIS

August 8, 1988

*Ouellette, Hallisey, Dibble and Tanguay P.A.*, of Dover (*Simone D. Masse* on the brief and orally), for the plaintiffs.

*Wyskiel, Boc & Reid P.A.*, of Dover (*Samuel R. Reid, III*, on the brief and orally), for the defendant.

THAYER, J. This is an appeal from the Trial Court's (*Gray*, J.) dismissal of the plaintiffs' complaint alleging breach of implied warranty of workmanlike quality and negligence. The primary issue before this court is whether a subsequent purchaser of real property may sue the builder/contractor on the theory of implied warranty of workmanlike quality for latent defects which cause economic loss, absent privity of contract.

■ We hold that privity of contract is not necessary for a subsequent purchaser to sue a builder or contractor under an implied warranty theory for latent defects which manifest themselves within a reasonable time after purchase and which cause economic harm. Accordingly, we reverse the dismissal by the trial court, and remand.

In 1977, the plaintiffs' predecessors in title contracted with the defendant, Dagenais, to build a garage. In April, 1978, within six months after the garage's construction, the original owners sold the property to plaintiffs, Elaine and Larry Lempke. Shortly after they purchased the property, the plaintiffs began to notice structural problems with the garage—the roof line was uneven and the roof trusses were bowing out. The plaintiffs contend that the separation of the trusses from the roof was a latent defect which could not be discovered until the separation and bowing became noticeable from the exterior of the structure. Fearing a cave-in of the roof, the plaintiffs contacted the defendant and asked him to repair the defects. The defendant initially agreed to do so, but never completed the necessary repairs. The plaintiffs then brought suit against the builder. In turn, the builder filed a motion to dismiss, which the superior court granted based on our holding in *Ellis v. Morris*, 128 N.H. 358, 513 A.2d 951 (1986). This appeal followed.

The plaintiffs set forth three claims in their brief: one for breach of implied warranty of workmanlike quality; one for negligence; and one, in the alternative, for breach of assigned contract rights. We need address only the first two claims.

■ We have previously denied aggrieved subsequent purchasers recovery in tort for economic loss and denied them recovery under an implied warranty theory for economic loss. *See Ellis v. Morris supra.* The court in *Ellis* acknowledged the problems a subsequent purchaser faces, but declined to follow the examples of those cases which allow recovery. 128 N.H. at 361, 513 A.2d at 952. The policy arguments relied upon in *Ellis* for precluding tort recovery for economic loss, in these circumstances, accurately reflect New Hampshire law and present judicial scholarship, *see generally* Bertschy, *Negligent Performance of Service Contracts and Economic Loss*, 17 J. MAR. L. REV. 246 (1984) (hereinafter NEGLIGENT PERFORMANCE) and, as such, remain controlling on the negligence claim. However, the denial of relief to subsequent purchasers on an implied warranty theory was predicated on the court's adherence to the requirement of privity in a contract action and on the fear that to allow recovery without privity would impose

unlimited liability on builders and contractors. Thus we need only discuss the implied warranty issue.

## I. *Privity*

This case affords us an opportunity to review and reassess the issue of privity as it relates to implied warranties of workmanlike quality. In *Norton v. Burleaud*, 115 N.H. 435, 342 A.2d 629 (1975), this court held that an implied warranty of workmanlike quality applied between the builder of a house and the first purchaser. The *Norton* court so held based on the facts before it, and did not explicitly or impliedly limit the benefit of implied warranties solely to the first purchaser. The question before us today is whether this implied warranty may be relied upon by subsequent purchasers and, if so, whether recovery may be had for solely economic loss.

There has been much judicial debate on the basis of implied warranty. Some courts find that it is premised on tort concepts. *See, e.g., LaSara Grain v. First National Bank of Merchants*, 673 S.W.2d 558, 565 (Tex. 1984) ("implied warranties are created by operation of law and are grounded more in tort than contract"); *Berman v. Watergate West, Inc.*, 391 A.2d 1351 (D.C. App. 1978).

Other courts find that implied warranty is based in contract. *See, e.g., Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 183, 441 N.E.2d 324, 330 (1982) (Implied warranty extended to subsequent purchaser, who purchased house from original owner within first year, for policy reason. Plaintiff could recover under implied warranty theory for cracks in basement, chimney and adjoining wall separating, water leakage in basement, but no recovery in negligence for economic harm.); *Aronsohn v. Mandara*, 98 N.J. 92, 484 A.2d 675 (1984) (suit for implied warranty of habitability for structurally unsound patio); *Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041 (Colo. 1983) (en banc) (implied warranty arises from contractual relationship).

Other authorities find implied warranty neither a tort nor a contract concept, but "a freak hybrid born of the illicit intercourse of tort and contract. . . . Originally sounding in tort, yet arising out of the warrantor's consent to be bound, it later ceased necessarily to be consensual, and at the same time came to lie mainly in contract." Prosser, *The Assault Upon the Citadel*, 69 YALE L. J. 1099, 1126 (1960); *accord Scott v. Strickland*, 10 Kan. App. 2d 14, 18, 691 P.2d 45, 50 (Kan. App. 1984) (discussing first purchaser, court found implied warranty could be tort or contract); Edmeades, *The Citadel Stands: The Recovery of Economic Loss in*

*American Products Liability*, 27 CASE W. RES. L. REV. 647, 662 (1977) (hereinafter *The Citadel Stands*).

Regardless of whether courts have found the implied warranty to be based in contract or tort, many have found that it exists independently, imposed by operation of law, the imposition of which is a matter of public policy. *See* 67A AM. JUR. 2d § 690 ("Implied warranties arise by operation of law and not by agreement of the parties, their purpose being to protect the buyer from loss. . . ."); *Elliott v. Lachance*, 109 N.H. 481, 483, 256 A.2d 153, 155 (1969) ("Such warranties [referring to UCC merchantability] are not created by agreement . . . but are said to be imposed by law on the basis of public policy."); *Richards v. Powercraft Homes, Inc.*, 139 Ariz. 242, 678 P.2d 427 (1984) (en banc) (Warranty of workmanlike quality and habitability is imposed by law. Homeowners were entitled to recover for breach of implied warranty of workmanlike quality for damages such as cracking, separation of floors from walls, regardless of privity, so long as no substantial change occurred to structure.); *Terlinde v. Neely*, 275 S.C. 395, 271 S.E.2d 768 (1980) (Subsequent purchaser can rely on theories of implied warranty and negligence for cracks in structure, ill-fitting doors, etc. Court allowed recovery on both theories as a matter of public policy, holding builder to industry standards.); *Barnes v. Mac Brown & Co., Inc.*, 264 Ind. 227, 342 N.E.2d 619 (1976) (Implied warranty extended to second purchaser for latent defects which caused economic harm. Implied warranty of fitness is to real property what implied warranty of merchantability is to personal property.); *Redarowicz*, 92 Ill. 2d at 183, 441 N.E.2d at 330 ("While the warranty of habitability has its roots in the execution of the contract . . . we emphasize that it exists independently.") (Citations omitted.); *Petersen v. Hubschman Const. Co.*, 76 Ill. 2d 31, 38, 389 N.E.2d 1154, 1157 (1979) ("implied warranty . . . is a judicial innovation . . . used to avoid the harshness of *caveat emptor* . . . ."); *George v. Veach*, 67 N.C. App. 674, 677, 313 S.E.2d 920, 922 (1984) ("An implied warranty arises by operation of law. . . ."); *Woodward v. Chirco Const. Co., Inc.*, 141 Ariz. 514, 687 P.2d 1269 (1984) (en banc); *Nastri v. Wood*, 142 Ariz. 439, 690 P.2d 158 (1984).

█ We continue to agree with our statement in *Elliott, supra* at 483–84, 256 A.2d at 155, that

"[implied] warranties are not created by an agreement . . . between the parties but are said to be imposed by law on the basis of public policy. They arise by operation of law

because of the relationship between the parties, the nature
of the transaction, and the surrounding circumstances,"
and agree with other courts that find implied warranties, in
circumstances similar to those presented here, to be creatures of
public policy "that ha[ve] evolved to protect purchasers of . . . homes
upon the discovery of latent defects," *Redarowicz*, 92 Ill. 2d at 183,
441 N.E.2d at 330, and that, regardless of their theoretical origins,
"exist[ ] independently." *Id.*

There are jurisdictions which have refused to extend the implied
warranty to subsequent purchasers, finding privity necessary. *See,
e.g., Arvai v. Shaw*, 289 S.C. 161, 345 S.E.2d 715 (1986); *Butler v.
Caldwell & Cook, Inc.*, 122 A.D.2d 559, 505 N.Y.S.2d 288 (1986);
*Dunant v. Wilmock, Inc.*, 176 Ga. App. 48, 335 S.E.2d 162 (1985);
*Fretschel v. Burbank*, 351 N.W.2d 403 (Minn. App. 1984); *John H.
Armbruster & Co. v. Hayden Company-Builder Developer, Inc.*, 622
S.W.2d 704 (Mo. App. 1981); *Brown v. Fowler*, 279 N.W.2d 907 (S.D.
1979); *Navajo Circle, Inc. v. Development Concepts Corp.*, 373 So.
2d 689 (Fla. App. 2d Dist. 1979) (economic recovery in negligence
action, but no implied warranty to subsequent purchasers); *Coburn
v. Lenox Homes, Inc.*, 173 Conn. 567, 378 A.2d 599 (1977); *Herz v.
Thornwood Acres "D", Inc.*, 86 Misc. 2d 53, 381 N.Y.S.2d 761 (N.Y.
Just. Ct. 1976), *aff'd*, 91 Misc. 2d 130, 397 N.W.S.2d 358 (1977);
*Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041 (Colo. 1983)
(Court allowed recovery in negligence for economic damages but
disallowed recovery for implied warranty because of lack of
privity.). *But see Utz v. Moss*, 31 Colo. App. 475, 503 P.2d 365 (1972)
(extension of warranty when contractor should have known that
realty company would not be first purchaser).

However, numerous jurisdictions have now found privity of
contract unnecessary for implied warranty. *See, e.g., Tusch
Enterprises v. Coffin*, 113 Ida. 37, 740 P.2d 1022 (1987) (Subsequent
purchasers who suffer purely economic damages from latent
defects manifested within a reasonable time may maintain an
action in implied warranty without privity, but not in negligence.);
*Richards v. Powercraft Homes, Inc.*, 139 Ariz. 242, 678 P.2d 427;
*Nastri v. Wood*, 142 Ariz. 439, 690 P.2d 158; *Reichelt v. Urban
Investment & Development Co.*, 577 F. Supp. 971 (N.D. Ill., E.D.
1984); *Aronsohn v. Mandara*, 98 N.J. 92, 484 A.2d 675 (Subsequent
purchasers could sue, on negligence and implied warranty of
habitability, for defective construction of patio and recover for
economic damages.); *Bridges v. Ferrell*, 685 P.2d 409 (Okla. App.
1984); *Keyes v. Guy Baily Homes, Inc.*, 439 So. 2d 670 (Miss. 1983)
(Overruling earlier Mississippi cases preventing recovery. Subse-

quent purchaser can now sue builder for breach of implied warranty of good workmanship for latent defects resulting in financial losses. The court reasoned that an innocent purchaser should not suffer when the builder failed to construct the building in a workmanlike manner.); *Briarcliffe West v. Wiseman Const. Co.*, 118 Ill. App. 3d 163, 454 N.E.2d 363 (1983) (implied warranty extended to subsequent purchaser of vacant common lot who discovers latent defect within reasonable time); *Gupta v. Ritter Homes, Inc.*, 646 S.W.2d 168 (Tex. 1983) (implied warranty of habitability and good workmanship implicit in contract and automatically assigned to subsequent purchaser); *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 441 N.E.2d 324; *Elden v. Simmons*, 631 P.2d 739 (Okla. 1981) (Suit for damages resulting from cracking, buckling; implied warranty of habitability and workmanlike manner does not necessarily terminate upon transfer of title. Court analogized situation similar to the UCC and reasoned that buyers were in chain of title.); *Blagg v. Fred Hunt Co.*, 272 Ark. 185, 612 S.W.2d 321 (1981); *Hermes v. Staiano*, 181 N.J. Super. 424, 437 A.2d 925 (1981) (subsequent purchasers could recover for buckling foundation on theory of implied warranty and strict liability); *Terlinde v. Neely*, 275 S.C. 395, 271 S.E.2d 768; *Wagner Construction Co., Inc. v. Noonan*, 403 N.E.2d 1144 (Ind. App. 1st Dist. 1980) (subsequent purchasers could maintain suit in implied warranty for damages resulting from septic system backup); *Moxley v. Laramie Builders, Inc.*, 600 P.2d 733 (Wyo. 1979) (Subsequent purchasers could sue on implied warranty and negligence theories for latent defects in electric system.); *Berman v. Watergate West, Inc.*, 391 A.2d 1351; *Barnes v. Mac Brown & Co. Inc.*, 264 Ind. 227, 342 N.E.2d 619.

Despite the *Ellis* ruling, New Hampshire has generally disfavored privity in certain situations. *See, e.g.*, RSA 382–A:2–318 (Supp. 1986) (New Hampshire adoption of UCC Alternative C which abolishes privity in implied warranty suits); *Spherex, Inc. v. Alexander Grant & Co.*, 122 N.H. 898, 903, 451 A.2d 1308, 1311 (1982). In *Spherex*, the court found privity of contract unnecessary for negligent misrepresentation by accountant. "Our reluctance to applying the privity rule has been extended to allowing the proper plaintiff to recover for mere financial loss resulting from negligent performance of services." *Id.* We likened an accountant to a manufacturer and found that an accountant was in the best position to regulate the effects of his conduct by controlling the degree of care exercised in his professional duties. *See also Robinson v. Colebrook Guaranty Savings Bank*, 109 N.H. 382, 384–85, 254 A.2d

837, 839 (1969) (savings institution may be liable to third parties where depositor relied upon bank—privity not necessary); *Lenz v. Standard Oil Co. of N.Y.*, 88 N.H. 212, 186 A. 329 (1936) (privity not necessary for negligence action for inherently dangerous product).

In keeping with judicial trends and the spirit of the law in New Hampshire, we now hold that the privity requirement should be abandoned in suits by subsequent purchasers against a builder or contractor for breach of an implied warranty of good workmanship for latent defects. "To require privity between the contractor and the home owner in such a situation would defeat the purpose of the implied warranty of good workmanship and could leave innocent homeowners without a remedy. . . ." *Aronsohn*, 98 N.J. at 102, 484 A.2d at 680.

Numerous practical and policy reasons justify our holding. The essence of implied warranty is to protect innocent buyers. As such, this principle, which protects first purchasers as recognized by *Norton v. Burleaud*, 115 N.H. 435, 342 A.2d 629, is equally applicable to subsequent purchasers. The extension of this principle is based on "sound legal and policy considerations." *Terlinde*, 275 S.C. at 397, 271 S.E.2d at 769. The mitigation of *caveat emptor* should not be frustrated by the intervening ownership of the prior purchasers. As a general principle, "[t]he contractor should not be relieved of liability for unworkmanlike construction simply because of the fortuity that the property on which he did the construction has changed hands." *Aronsohn, supra* at 102, 484 A.2d at 680. As the court in *Moxley* said:

> "Let us assume for example a person contracts construction of a home and, a month after occupying, is transferred to another locality and must sell. Or let us look at the family which contracts construction, occupies the home and the head of the household dies a year later and the residence must, for economic reasons, be sold. Further, how about the one who contracts for construction of a home, occupies it and, after a couple of years, attracted by a profit incentive caused by inflation or otherwise, sells to another. No reason has been presented to us whereby the original owner should have the benefits of an implied warranty or a recovery on a negligence theory and the next owner should not simply because there has been a transfer. Such intervening sales, standing by themselves, should not, by any standard of reasonableness, effect an end to an implied warranty or,

in that matter, a right of recovery on any other ground, upon manifestation of a defect. The builder always has available the defense that the defects are not attributable to him."

600 P.2d at 736; *accord Aronsohn*, 98 N.J. at 102, 484 A.2d at 680; *Keyes*, 439 So. 2d at 672.

First, "[c]ommon experience teaches that latent defects in a house will not manifest themselves for a considerable period of time . . . after the original purchaser has sold the property to a subsequent unsuspecting buyer." *Terlinde*, 275 S.C. at 398, 271 S.E.2d at 769.

Second, our society is rapidly changing.

"We are an increasingly mobile people; a builder-vendor should know that a house he builds might be resold within a relatively short period of time and should not expect that the warranty will be limited by the number of days that the original owner holds onto the property."

*Redarowicz*, 92 Ill. 2d at 185, 441 N.E.2d at 330. Furthermore, "the character of society has changed such that the ordinary buyer is not in a position to discover hidden defects . . . ." *Terlinde, supra* at 397, 271 S.E.2d at 769; *Redarowicz, supra* at 184, 441 N.E.2d at 330 (citation omitted).

Third, like an initial buyer, the subsequent purchaser has little opportunity to inspect and little experience and knowledge about construction. "Consumer protection demands that those who buy homes are entitled to rely on the skill of a builder and that the house is constructed so as to be reasonably fit for its intended use." *Moxley*, 600 P.2d at 735; *accord Wagner Const. Co., Inc.*, 403 N.E.2d 1144, 1147.

Fourth, the builder/contractor will not be unduly taken unaware by the extension of the warranty to a subsequent purchaser. "The builder already owes a duty to construct the home in a workmanlike manner . . . ." *Keyes*, 439 So. 2d at 673. And extension to a subsequent purchaser, within a reasonable time, will not change this basic obligation.

Fifth, arbitrarily interposing a first purchaser as a bar to recovery "might encourage sham first sales to insulate builders from liability." *Richards*, 139 Ariz. at 245, 678 P.2d at 430.

Economic policies influence our decision as well. "[B]y virtue of superior knowledge, skill, and experience in the construction of houses, a builder-vendor is generally better positioned than the purchaser to . . . evaluate and guard against the financial risk posed by a [latent defect] . . . ." *George v. Veach*, 313 S.E.2d 920, 923 (N.C.

App. 1984), *quoted in Gaito v. Auman*, 318 S.E.2d 555, 559 (N.C. App. 1984), *aff'd*, 327 S.E.2d 870 (N.C. 1985), *and Tusch Enterprises v. Coffin*, 740 P.2d at 1032.

As the *Moxley* court stated: the "purpose of [an] [implied] warranty is to protect innocent purchasers and hold builders accountable for their work . . . [and] any reasoning which would arbitrarily interpose a first buyer as an obstruction to someone equally as deserving of recovery is incomprehensible." 600 P.2d at 736.

This court, as well, does not find it logical to limit protection arbitrarily to the first purchaser. Most purchasers do not have the expertise necessary to discover latent defects, and they need to rely on the skill and experience of the builder. After all, the effect of a latent defect will be equally debilitating to a subsequent purchaser as to a first owner, and the builder will be "just as unable to justify the improper or substandard work." *Richards*, 139 Ariz. at 245, 678 P.2d at 430; *accord Gupta*, 646 S.W.2d at 169.

Not only do policy and economic reasons convince us that a privity requirement in this situation is unwarranted, but analogous situations show us the soundness of this extension. Public policy has compelled a change in the law of personal property and goods, as witnessed by the adoption of the UCC. The logic which compelled this change is equally persuasive for real property. *Accord Barnes*, 264 Ind. at 230, 342 N.E.2d at 620; *Elden v. Simmons*, 631 P.2d at 742 ("requirement of vertical privity, as a prerequisite to suit on an implied . . . warranty, both under the Uniform Commercial Code and outside the Code, is, given today's market structure, an antiquated notion"). As one law review commentator said: the "[a]pplication of such a warranty is similar to that of implied warranty of fitness and merchantability under the Uniform Commercial Code." Comment, *Builder's Liability for Latent Defects in Used Homes*, 32 STAN. L. REV. 607 (1980) (author urged that regardless of method employed, liability for latent defects occurring within a reasonable time should be placed on builder); *accord Petersen*, 76 Ill. 2d at 42, 389 N.E.2d at 1159 (quoting Comment, *Washington's New Home Implied Warranty of Habitability—Explanation and Model Statute*, 54 WASH. L. REV. 185, 211–12 (1978) ("Using the Uniform Commercial Code by analogy, the builder/vendor would guarantee that, upon sale, the house would be of fair average quality, that it would pass without objection in the building trade . . . .").

## II. *Economic Loss*

Finally, we address the issue of whether we should allow recovery for purely economic harm, which generally is that loss resulting from the failure of the product to perform to the level expected by the buyer and is commonly measured by the cost of repairing or replacing the product. *See* Comment, *Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages—Tort or Contract?*, 114 U. PA. L. REV. 539, 541 (1966) (hereinafter *Remote Purchaser*); Bertschy, *Negligent Performance*, 17 J. MAR. L. REV. at 264–70. Much theoretical debate has taken place on whether to allow economic recovery and whether tort or contract is the most appropriate vehicle for such recovery.

It is clear that the majority of courts do not allow economic loss recovery in tort, but that economic loss is recoverable in contract, *see Remote Purchaser*, 114 U. PA. L. REV. 539; *Negligent Performance*, 17 J. MAR. L. REV. 246; Note, *Economic Loss in Products Liability Jurisprudence*, 66 COLUM. L. REV. 917 (1966), and that economic loss recovery "is consistent with the policy of warranty law to protect expectations of suitability and quality[,]" *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 82, 435 N.E.2d 443, 449 (1982) (distinguishing between strict liability in tort and warranty); *accord* Edmeades, *The Citadel Stands*, 27 CASE W. RES. L. REV. at 662 ("[i]mplied warranty . . . had originally evolved as a remedy for economic loss"; author argues that economic recovery should be allowed in implied warranty without privity). However, what is less clear is whether courts allow recovery for economic loss on an implied warranty theory, without privity, in situations such as ours. Some courts do not. Other courts implicitly allow recovery for economic loss, *see, e.g., Moxley*, 600 P.2d 733 (electrical wire defective); *Terlinde*, 275 S.C. 395, 271 S.E.2d 768 (ill-fitting doors, cracking); *Richards*, 139 Ariz. 242, 678 P.2d 427 (separation of walls); *Elden*, 631 P.2d 739 (faulty bricks); *Nastri*, 142 Ariz. 439, 690 P.2d 158; and other courts that have dealt directly with the issue of economic harm in implied warranty have found that an aggrieved party can recover, *see, e.g., Barnes*, 264 Ind. at 230, 342 N.E.2d at 621; *Tusch*, 740 P.2d at 1035; *Keyes*, 439 So. 2d at 672; *Aronsohn*, 98 N.J. at 102, 484 A.2d at 680; *Redarowicz*, 92 Ill. 2d 171, 441 N.E.2d 324; *see Tamura, Inc. v. Sanyo Elec., Inc.*, 636 F. Supp. 1065, 1070–71 n.11 (N.D. Ill., C.D. 1986).

The courts which have allowed economic loss recovery in situations similar to ours have done so basically because the line between property damage and economic loss is not always easy to

draw. *See generally*, Bland & Wattson, *Property Damage Caused by Defective Products: What Losses are Recoverable?*, 9 WM. MITCHELL L. REV. 1, 4 (1984); Annotation, *Privity of Contract as Essential in Action Against Remote Manufacturer or Distributor for Defects in Goods Not Causing Injury to Person or to Other Property*, 16 A.L.R. 683, 699 (1967 & Supp. 1987); Bertschy, *The Economic Loss Doctrine in Illinois After Moorman*, 71 ILL. B. J. 346, 355 (1983). In his article, Bertschy states that the *Redarowicz* decision, the UCC commentary, and Justice Simon's comment in *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill. 2d at 98–99, 435 N.E.2d at 456, that economic loss should be recoverable out of privity in some circumstances, make a "strong argument for extending policy-based . . . warranties to subsequent purchasers in the case of economic loss."

 We agree with the courts that allow economic recovery in implied warranty for subsequent purchasers, finding as they have that "the contention that a distinction should be drawn between mere 'economic loss' and personal injury is without merit."

> "Why there should be a difference between an economic loss resulting from injury to property and an economic loss resulting from personal injury has not been revealed to us. When one is personally injured from a defect, he recovers mainly for his economic loss. Similarly, if a wife loses a husband because of injury resulting from a defect in construction, the measure of damages is totally economic loss. We fail to see any rational reason for such a distinction.
>
> If there is a defect in a stairway and the purchaser repairs the defect and suffers an economic loss, should he fail to recover because he did not wait until he or some member of his family fell down the stairs and broke his neck? Does the law penalize those who are alert and prevent injury? Should it not put those who prevent personal injury on the same level as those who fail to anticipate it?"

*Barnes*, 264 Ind. at 230, 342 N.E.2d at 621. The vendee has a right to expect to receive that for which he has bargained.

Permitting recovery for economic loss in implied warranty to subsequent purchasers of property is compelling.

> "In the sale of a home the transaction usually involves an individual owner who sells to an individual buyer. In such cases there ordinarily would be no implied warranty as to

latent defects. Since the UCC applies to 'transactions in goods,' no implied warranty of merchantability or fitness for a particular purpose would be created by the UCC."

*Szajna v. General Motors Corp.*, 115 Ill. 2d 294, 305–06, 503 N.E.2d 760, 765 (1986) (citations omitted) (case distinguishing between implied warranty in real estate as opposed to goods).

### III. *Limitations*

We are, however, aware of the concerns that this court in *Ellis* raised about unlimited liability. As with any rule, there must be built-in limitations, which in this case would act as a barrier to the possibility of unlimited liability.

Therefore, our extension of the implied warranty of workmanlike quality is not unlimited; it does not force the builder to act as an insurer, in all respects, to a subsequent purchaser. Our extension is limited to *latent* defects "which become manifest after the subsequent owner's purchase and which were not discoverable had a reasonable inspection of the structure been made prior to the purchase." *Richards*, 139 Ariz. at 245, 678 P.2d at 430.

The implied warranty of workmanlike quality for latent defects is limited to a reasonable period of time. *Terlinde*, 275 S.C. at 398, 271 S.E.2d at 769; *Redarowicz*, 92 Ill. 2d at 185, 441 N.E.2d at 331. "The length of time for latent defects to surface, so as to place subsequent purchasers on equal footing should be controlled by the standard of reasonableness and not an arbitrary time limit created by the Court." *Terlinde, supra* at 398, 271 S.E.2d at 769; *accord Barnes*, 264 Ind. at 229, 342 N.E.2d at 621; *Blagg*, 272 Ariz. at 187, 612 S.W.2d at 322.

Furthermore, the plaintiff still has the burden to show that the defect was caused by the defendant's workmanship, *Barnes, supra* at 230, 342 N.E.2d at 621; and defenses are also available to the builder. "The builder . . . can demonstrate that the defects were not attributable to him, that they are the result of age or ordinary wear and tear, or that previous owners have made substantial changes." *Richards*, 139 Ariz. at 245, 678 P.2d at 430.

Finally, we want to clarify that the duty inherent in an implied warranty of workmanlike quality is to perform in "a workmanlike manner and in accordance with accepted standards." *Norton v. Burleaud*, 115 N.H. at 436, 342 A.2d at 630. "The law recognizes an implied warranty that the contractor or builder will use the customary standard of skill and care." *Kenney v. Medlin*

*Const. & Realty Co.*, 68 N.C. App. 339, 343, 315 S.E.2d 311, 314 (1984); *accord Nastri*, 142 Ariz. at 444, 690 P.2d at 163.

In conclusion, to the extent *Ellis v. Morris*, 128 N.H. 358, 513 A.2d 951 suggests otherwise, we overrule it, and therefore reverse and remand this case for further proceedings.

*Reversed and remanded.*

SOUTER, J., dissented; the others concurred.

SOUTER, J. dissenting: Because I am not satisfied that there is an adequate justification to repudiate the rationale unanimously adopted by this court a mere two years ago in *Ellis v. Robert C. Morris, Inc.*, 128 N.H. 358, 513 A.2d 951 (1986), I respectfully dissent.