LOCKHEED MARTIN
CORP., Plaintiff,

v.

RFI SUPPLY, INC., et al.,
Defendants and

RANTEC POWER SYSTEMS, INC.,
Defendant and Third–Party
Plaintiff,

v.

STAR SPRINKLER, INC., et al.,
Third–Party Defendants.

No. CIV.A.00–11818 JLT.

United States District Court,
D. Massachusetts.

April 20, 2005.

Randy W. Gimple, Carlson, Calladine & Peterson LLP, San Francisco, CA, Kelley Christine Tramontana, Roy P. Giarrusso, Giarrusso, Norton, Cooley & McGlone, P.C., Quincy, MA, for Lockheed Martin Corp, Plaintiff.

Stephen A. Barber, Ropers Majeski Kohn & Bentley, San Francisco, CA, for Grinnel Corporation, Defendant.

Patrick J. Hagan, Dillingham & Murphy, San Francisco, CA, for Rantec Microwave & Electronics, Inc., Cross Defendant.

James S. Harrington, Robins, Kaplan, Miller & Ciresi L.L.P., Boston, MA, for Factory Mutual Insurance Company, Factory Mutual Research Corporation, Third-Party Defendants.

Edward E. Hartley, Dillingham & Murphy, San Francisco, CA, for Rantec Microwave & Electronics, Inc., Cross Defendant.

Richard B. Kirby, Keegan, Werlin & Pabian, LLP, Boston, MA, for Rantec Microwave & Electronics, Inc., Cross Defendant.

Alice K. Loh, Dillingham & Murphy, San Francisco, CA, for Rantec Microwave & Electronics, Inc., Cross Defendant.

R. Wardell Loveland, Coddington Hicks & Danforth, Redwood City, CA, for Kidde–Fenwal, Inc., Cross Claimant.

Francis K. Morris, Morris & Howard, Wellesley, MA, for Star Sprinkler Inc., Third-Party Defendant.

Jonathan D. Mutch, Robins, Kaplan, Miller & Ciresi L.L.P., Boston, MA, for Factory Mutual Insurance Company, Factory Mutual Research Corporation, Third-Party Defendants.

Mary W. O'Connor, Gaffin & Krattenmaker, Boston, MA, for Kidde–Fenwal, Inc., Cross Claimant.

Theodore C. Zayner, Sandall & Penrose, San Jose, CA, for RFI Supply, Inc., Defendant.

## MEMORANDUM

TAURO, District Judge.

On April 15, 1992, Plaintiff Lockheed Martin Corporation ("Lockheed") entered into. a written contract with Defendant Rantec Power Systems, Inc. ("Rantec").[1] Rantec agreed to design and construct an "anechoic chamber" at Lockheed's facility in Merrimack, New Hampshire. An anechoic chamber is a steel shielded room padded with foam material to absorb light and sound. These chambers are used by Lockheed to test antenna signals for aerospace and military applications. The contract required Rantec to install a fire detection and sprinkler system in the chamber.

The contract also contained a warranty clause that provides, "All equipment and workmanship shall be guaranteed to be free from defects by [Rantec] for a period of one (1) year after final acceptance, unless a different warranty is specified."[2] Rantec completed construction in 1992, and Lockheed made final acceptance of the chamber in 1993.[3]

In March of 1997, the sprinkler system allegedly malfunctioned releasing vast quantities of water into the chamber. As a result, the foam and sub-flooring of the chamber became water soaked.[4] Plaintiff spent over $400,000 to repair the chamber.[5] A similar sprinkler malfunction occurred at another Lockheed facility in Sunnyvale, California.

In December of 1999, Lockheed filed suit in the United States District Court for the Northern District of California against Rantec for breach of implied warranty, negligence, and strict products liability. The California district court severed Lock-

---

1. All of the following background facts are undisputed.

2. Pl.'s Reply to Def.'s Separate Statement of Undisputed Material Facts [# 25] ¶ 9.

3. *Id.* ¶¶ 5, 6.

4. Compl. ¶ 20.

5. *Id.*

heed's claims regarding the New Hampshire facility from the California litigation. The Parties then stipulated to transfer the New Hampshire claims to this court. In June of 2001, Rantec joined Third–Party Defendants Factory Mutual Insurance Company ("FMIC") and Factory Mutual Research Corporation ("FMRC").[6] In September of 2003, this court administratively closed the case without entry of judgment, pending resolution of the California litigation. This court has now reopened the case to consider Rantec's and the Third–Party Defendants' motions for summary judgment.

## Discussion

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate only if the record reveals that there is "no genuine issue as to any material fact and ... the moving party [has demonstrated an] entitle[ment] to a judgment as a matter of law."[7] Under this standard, the "party seeking summary judgment [must] make a preliminary showing that no genuine issue of material fact exists. Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue."[8] In deciding whether to allow a motion for summary judgment, a court " 'must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.' "[9]

### A. Lockheed's Claims Against Rantec

 Lockheed's contract claims are ripe for summary judgment. Lockheed relies on the implied warranties provided by New Hampshire's version of the Uniform Commercial Code ("UCC") because the express contractual warranty has expired.[10] Assuming, arguendo, that the contract, or a discrete aspect of the contract, is governed by the UCC,[11] Lockheed's implied warranty claims are time barred. An action for breach of contract, under New Hampshire's UCC, must be commenced within four years after the cause of action has accrued.[12] A cause of action for breach of warranty accrues when tender of delivery is made, "regardless of the aggrieved party's lack of knowledge of the breach."[13] Lockheed accepted the chamber and sprinkler system in 1993. Lockheed filed the complaint approximately six years later in 1999. And Lockheed points to no evidence sufficient to raise a genuine issue regarding equitable tolling of the statute of limitations.

 Lockheed has also brought negligence and products liability claims against

---

**6.** Rantec sought leave to amend the Third–Party Complaint in April of 2001.

**7.** Fed.R.Civ.P. 56(c). "In the lexicon of Rule 56, 'genuine' connotes that the evidence on the point is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party, and 'material' connotes that a contested fact has the potential to alter the outcome of the suit under the governing law if the controversy over it is resolved satisfactorily to the nonmovant." *Blackie v. Maine,* 75 F.3d 716, 721 (1st Cir.1996).

**8.** *Blackie,* 75 F.3d at 721 (quoting *Nat'l Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995)).

**9.** *Mullin v. Raytheon Co.,* 164 F.3d 696, 698 (1st Cir.1999) (quoting *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990)).

**10.** *See* N.H.Rev.Stat. § 382–A:2–314 (implied warranty of merchantability); N.H.Rev.Stat. § 382–A:2–315 (implied warranty of fitness for particular purpose).

**11.** *See* N.H.Rev.Stat. § 382–A:2–102 ("Unless the context otherwise requires, this Article applies to transactions in goods.").

**12.** N.H.Rev.Stat. § 382–A:2–725.

**13.** *Id.*

Rantec. But these tort claims fare no better. Under New Hampshire law, a contractor cannot be held liable, in tort, for selling or building a defective product in a commercial transaction when the malfunctioning product damages only itself and causes only *economic loss*.[14] Economic loss "generally is that loss resulting from the failure of the product to perform to the level expected by the buyer and is commonly measured by the cost of repairing or replacing the product."[15] In this case, the "product" covered by Lockheed's contractual warranty was the anechoic chamber. That product allegedly malfunctioned, damaging only itself.[16] And Lockheed measures its damages by the cost of repairing the product.[17]

Lockheed suggests that New Hampshire law would convert this breach of warranty into a tort because the economic loss was caused by a "sudden or dangerous occurrence."[18] This court disagrees. In an admiralty case involving similar tort claims, the United States Supreme Court, after surveying state law, explained, "Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, de-creased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law."[19] A New Hampshire District Judge has predicted that the New Hampshire Supreme Court will adopt this reasoning if confronted with this precise question.[20] This prediction is still sound. Lockheed, therefore, cannot advance tort claims for damage to the anechoic chamber because these allegations assert purely economic loss. For the foregoing reasons, Rantec's motion for summary judgment is ALLOWED.

### B. *Rantec's Third–Party Claims*

■ Third–Party Defendants FMIC and FMRC have moved for summary judgment on Rantec's Second Amended Third–Party Complaint. Because this court has allowed Rantec's motion for summary judgment with respect to Lockheed's underlying claims, Rantec's indemnity and contribution claims, against all Third–Party Defendants, are moot. In addition, Rantec's negligence and negligent misrepresentation claims against FMIC and FMRC are time barred by the New Hampshire statute of repose.[21] Rantec

---

14. *Public Serv. Co. of N.H. v. Westinghouse Elec. Corp.*, 685 F.Supp. 1281, 1285 (D.N.H. 1988); *Ellis v. Robert C. Morris, Inc.*, 128 N.H. 358, 513 A.2d 951, 954 (1986). In *Border Brook Terrace Condominium Ass'n v. Gladstone*, 137 N.H. 11, 622 A.2d 1248, 1253 (1993), the Court distinguished between structural damages to a condominium involving purely economic loss and damages to other condominium property caused by the structural defects. The Court explained, "We leave it to the [trial] court on remand to determine which particular allegations assert purely 'economic loss,' and which do not. Those that do assert purely 'economic loss' cannot be maintained as a negligence claim." *Id.*

15. *Lempke v. Dagenais*, 130 N.H. 782, 547 A.2d 290, 296 (1988).

16. *See* Compl. ¶ 20. Lockheed claims that some equipment in the chamber at the time of the malfunction was also damaged. Even if this equipment is considered "other property," Lockheed points to no evidence that this property damage exceeds $75,000.

17. *Id.*

18. Pl.'s Opp'n to Mot. of Def. for Summ. J. at 6.

19. *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 870, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).

20. *Public Serv. Co. of N.H. v. Westinghouse Elec. Corp.*, 685 F.Supp. 1281, 1286 (D.N.H. 1988).

21. N.H.Rev.Stat. § 508:4–b. Under this statute, "[A]ll actions to recover damages for

has argued, and is correct, that the statute of repose contains an exception for fraud.[22] Rantec, however, has not pled fraud.

Finally, Rantec claims that FMIC and FMRC violated Mass. Gen. Laws chapter 93A by representing that FMRC is an "independent laboratory testing" service.[23] This court need not resolve the Parties' dispute over the meaning of the word "independent" because Rantec's evidence fails to establish "unscrupulous, intolerable, and unethical" behavior sufficient to violate Mass. Gen. Laws chapter 93A.[24] In light of the nature of this challenged conduct and "the purpose and effect of that conduct," FMIC and FMRC are entitled to judgment as a matter of law.[25] FMIC and FMRC argue, and this court agrees, that the claim also fails because the allegedly "unfair or deceptive act or practice" did not occur "primarily and substantially within the Commonwealth [of Massachusetts]."[26] For the foregoing reasons, FMIC's and FMRC's motion for summary judgment is ALLOWED.

AN ORDER WILL ISSUE.

---

injury to property, injury to the person, wrongful death or economic loss arising out of any deficiency in the creation of an improvement to real property, including without limitation the design, labor, materials, *engineering, planning, surveying, construction, observation, supervision or inspection* of that improvement, shall be brought within 8 years from the date of substantial completion of the improvement, and not thereafter." *Id.* (emphasis added). Rantec claims that FMRC "researched, designed, inspected, tested or failed to test, recommended, approved and certified the fire suppression system in Lockheed's chamber." Second Am. Third–Party Compl. ¶ 28.

22. N.H.Rev.Stat. § 508:4–b(V)(a).

23. Second Am. Third–Party Compl. ¶ 43.

24. *Williams v. Arndt,* 626 F.Supp. 571, 582 (D.Mass.1985).

25. *Mass. Employers Ins. Exch. v. Propac-Mass, Inc.,* 420 Mass. 39, 648 N.E.2d 435, 438 (1995).

26. Mass. Gen. Laws ch. 93A, § 11. Rantec admits that it entered into a contractual relationship and received communications from FMRC in California. *See* P. & A. in Supp. of Rantec's Opp'n to Mot. Summ. J. of Factory Mutual Entities at 12.