**Jose M. BETANCOURT,
Plaintiff, Appellant,**

v.

**W.D. SCHOCK CORPORATION,
Defendant, Appellee.**

No. 89–2085.

United States Court of Appeals,
First Circuit.

Heard April 3, 1990.

Decided July 11, 1990.

Rafael Gonzalez Velez with whom Rafael Gonzalez Velez Law Offices was on brief for plaintiff, appellant.

Andres R. Nevares Gonzalez with whom Nevares, Cartagena & Quinones was on brief for defendant, appellee.

Before BREYER, Chief Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

BREYER, Chief Judge.

The appellant, Jose Betancourt, found a serious defect in his sailboat. He sued the manufacturer, W.D. Schock Corporation, in "tort" and "contract," asking for damages representing his "investment" in the boat (about $72,000), his monthly upkeep for the period the boat was "totally inoperative" ($5000), and the "pain and mental anguish" he suffered by not having a boat that would work ($25,000). The district court, concluding that the relevant statute of limitations barred this lawsuit, granted the defendant's motion for summary judgment. Betancourt now appeals.

1. *Relevant background.* Reading the record in a manner appropriately favorable to Betancourt, we assume the following relevant facts:

a. On November 3, 1981, Betancourt bought the sailboat from the defendant. The defendant issued a "limited warranty," which (1) guaranteed the boat "to be free from defects in material and workmanship under normal use and service for a period of six months after purchase ...," (2) disclaimed any liability for "failure due to racing or use beyond the designed limits of the yacht," and (3) gave the defendant the right to decide whether to "repair" or to "replace" a defective product.

b. In April 1982, Betancourt told the defendant that the boat had several defects, including a crack in the floor on the starboard side. The defendant repaired those defects.

c. Between June 1982 and November 1984 Betancourt and the defendant had no communication with each other.

d. On November 19, 1984, during a race, a metal plate (the "chain plate") that attaches a sail cable to the boat's deck lifted up from the deck, causing damage.

e. On December 27, 1984, Betancourt notified the defendant about the chain plate problem. The defendant offered to repair the boat, but refused to replace the boat or to return Betancourt's purchase price.

f. On February 20, 1986, Betancourt filed this lawsuit.

The district court held that the relevant statute of limitations is the statute governing suits for breach of a statutorily imposed warranty against hidden defects in a product. That statute requires a buyer to bring a lawsuit within six months from the product's delivery date. Betancourt argues on appeal (1) that this statute, in fact, gives him a longer time within which to bring the suit, and (2) that, regardless, different statutes, governing ordinary "contract" and ordinary "tort" suits, apply to his case and have significantly longer limitation periods. We shall consider each of his arguments in turn.

■ 2. *The "breach of warranty" statute.* The parties agree that the manufacturer's express contractual warranty had expired long before 1984. Betancourt points out, however, that Puerto Rico's Code itself provides a special warranty against hidden defects. It says:

The vendor is bound to give a warranty against hidden defects which the thing sold may have should they render it unfit for the use to which it was destined, or if they should diminish said use in such manner that had the vendee had knowledge thereof he would not have acquired it or would have given a lower price for it.... The vendor is liable ... even

when [the hidden defects] should be unknown to him.

31 L.P.R.A. §§ 3841, 3842. The Code goes on to say that actions for hidden defects

shall be extinguished after six months, counted from the delivery of the thing sold.

31 L.P.R.A. § 3847. Since November 1984 is far more than "six months, counted from the delivery" of the boat in April 1982, it is difficult to understand how Betancourt's warranty action could be timely.

Betancourt points to language in a Commonwealth Supreme Court opinion that says the warranty limitation period runs, not from the date of delivery, but "from the day the steps to come to an understanding following the contract were interrupted." *Ferrer v. General Motors Corp.,* 100 P.R.R. 244, 254 (1971). He argues that this mysterious-sounding language means the statute was tolled, since (1) the "defect" that caused the metal plate to lift in 1984 is really part of the same defect that caused the floor crack in 1982, and (2) he notified the defendant about the floor crack within six months of the boat's delivery date.

An examination of the Commonwealth Supreme Court cases in which Betancourt found this language, however, reveals that it is not mysterious and that it does not help Betancourt. In *Ferrer*, the plaintiff had bought a defective car from the defendant, the plaintiff had complained about defects within the warranty period, and the plaintiff and defendant had engaged in a continuous series of contacts and negotiations about the defects up until the time of the eventual law suit. Similarly, in *Casa Jaime Corp. v. Castro,* 89 P.R.R. 686 (1963), the case on which the *Ferrer* court relied, the plaintiff had bought a defective sewing machine from the defendant, the plaintiff had complained about defects within six months, and the plaintiff had repeatedly returned the machine to the manufacturer over the course of the year immediately preceding the lawsuit. The Supreme Court found that the limitation period extended beyond "six months from delivery" because of the constant stream of

"claims and answers" flowing between plaintiff and defendant from the time of a timely initial complaint until the filing of the suit. In this context, the Court wrote that the six-month limitation period begins to run "from the day the steps to come to an understanding following the contract were interrupted." 89 P.R.R. at 688 (quoting 10 Manresa, *Comentarios al Codigo Civil Espanol* 265). In this case, even if we assume the floor crack and plate defect were but two manifestations of a single problem, we do not see how anyone could find a continuous series of "claims and answers" between April 1982 and November 1984. Indeed, the parties engaged in no communication at all during that period of time, which lasted far longer than six months. Consequently, the limitation period has expired.

■ 3. *The "breach of contract" claim.* Betancourt argues that his legal action is also an action for breach of contract, with a corresponding limitation period much longer than six months. *See* 31 L.P.R.A. § 3512 (action to annul contract for deceit expires four years from date of contract); 31 L.P.R.A. § 5294 (other breach of contract actions expire after fifteen years). The problem with this argument, however, is that Betancourt does not purport to rest his suit on the contract's express warranty and the Commonwealth Supreme Court has made clear that a party cannot avoid the statutory hidden-defect warranty's six-month limitation period simply by relabeling his action with the words "breach of contract."

In *Marquez v. Torres Campos,* 111 D.P.R. 1085 (1982) (official translation), Puerto Rico's Supreme Court wrote:

(1) from the facts of a case where an object with defects has been sold, the possibility may arise that the special warranty action for hidden defects and/or one or several actions of a general nature may be filed which are not incompatible per se; (2) the affected purchaser may choose to bring the action he deems more appropriate to protect his rights, *provided he does not use the general action to evade applicable rules related*

*to the special action that are incompatible with the provisions of the general action;* (3) when elucidating, between two incompatible provisions, which one is applicable, the particular circumstances of the case and the rights claimed by the affected buyer should be examined in order to determine if the special rule is the applicable one and if it excludes the general one.

111 D.P.R. at 1103 (emphasis added). In reaching this conclusion, the Court quoted from a judgment of the Supreme Court of Spain, in which that Court distinguished " 'between the relief asked in the complaint that is *really in the nature of a warranty action for hidden defects of the thing sold, even when it is disfigured to escape the special [six-month] period of limitation,* and that which is not.' " 111 D.P.R. at 1101 (emphasis added).

In this case, if one asks, "What contractual promise did the manufacturer allegedly break?" the answer must be, "Its promise to deliver a boat without hidden defects." If one asks, "What misrepresentation did the manufacturer make that allegedly justifies setting the contract aside?" the answer must be, "A misrepresentation that the boat had no hidden defects." A defective "metal plate," as described in the complaint and other documents before us, would seem the very kind of "hidden defect" that the hidden-defect warranty statute is meant to cover. If this plaintiff could avoid the six-month limitation period simply by calling his suit one for "breach of contract," or one "to set aside a contract," virtually every plaintiff with a hidden-defect warranty claim could do the same.

Betancourt responds that, in *Marquez,* the Commonwealth Supreme Court *permitted* a plaintiff to escape the six-month limitation period by characterizing his action as one for "contractual deceit." He points out that the defendant in that case sold plaintiff cattle that had tuberculosis. In doing so, he failed to tell the plaintiff that the cattle were in quarantine. What is the difference, asks Betancourt, between one who sells cattle with the "defect" of tuber-

culosis, and one who sells a boat with the "defect" of an unsound chain plate?

The answer to this question lies in the distinctions that the Supreme Court itself gave in *Marquez*. It said that the plaintiff's cattle claim arose

> [1] not from the objective fact of the defect in the object of the contract, which is what gives life to an action of warranty, but from a subjective circumstance provoked by the defendant's deceitful action [2] which resulted in damages that go beyond the defect in the object of the contract and which is thus outside the frame of the concept of warranty.

111 D.P.R. at 1105. The court also considered [3] the fact that infected cattle involve an important public interest. 111 D.P.R. at 1104.

Here, plaintiff's claim rests upon the "objective" fact of a defect. We have found nothing in his opposition to the motion for summary judgment that would permit a jury to find that the defendant "subjectively" *knew* about the defect at the time he sold the boat. Plaintiff alleged in his complaint that the defect itself was so serious that the manufacturer "knew or should have known" about it. But this allegation, in turn, rests upon no more than the "objective" fact of defect; there is no evidence of a separate "subjective ... deceitful action." (Indeed, the complaint does not allege intentional misrepresentation.) Moreover, the damages that plaintiff seeks are *not* significantly "outside the frame of the concept of warranty," which is to say, they are damages (a new boat, compensation for lost "down time," directly related "suffering") a plaintiff might try to obtain in an action for breach of warranty (but which is not to say this plaintiff could succeed in obtaining them were a suit timely). Finally, the "public interest" in preventing sales of boats with defective metal chain plates is significantly less than the interest in stopping the sale of tubercular cattle.

Consequently, we conclude that this case falls within the general rule and not within the exception that the facts of *Marquez* illustrate. This plaintiff cannot escape the short "hidden defect" limitation period simply by relabeling his action with the words "breach of contract," "contractual deceit," "misrepresentation," or the like. *See Kali Seafood, Inc. v. Howe Corp.*, 887 F.2d 7, 11–12 (1st Cir.1989).

■ 4. *The "tort" claim.* Appellant also calls his action a "tort" action, which, like a contract action, enjoys a longer limitation period than a warranty claim does. *See* 31 L.P.R.A. § 5298(2) (negligence claim expires one year from time plaintiff has knowledge of injury). We do not see how he can assert a tort claim, however, for Puerto Rico's negligence statute, 31 L.P.R.A. § 5141, does not apply in the context of a commercial transaction. *See Stainless Steel & Metal Mfg. v. Sacal V.I., Inc.*, 452 F.Supp. 1073, 1081 (D.P.R.1978) (section 5141 does not apply where source of obligation is contractual). Regardless, for the reasons we have just set forth, he cannot escape the "warranty" statute by relabeling his action with the name "tort" any more than by relabeling it "contract." In this connection, though aware that common law authority is not directly in point, *see Valle v. American International Insurance Co.*, 108 D.P.R. 735, 736–38 (1979) (official translation), we cannot resist quoting the words of the United States Supreme Court in a similar context:

> Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law.... [A] manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself.... Damage to a product itself is most naturally understood as a warranty claim.... The maintenance of product value and quality is precisely the purpose of express and implied warranties.

*East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 870–72, 106 S.Ct. 2295, 2301–03, 90 L.Ed.2d 865 (1986).

5. *The "fraud" claim.* Betancourt says he has asserted a claim for fraud. The short, conclusive answer to this claim is that his complaint nowhere states with "particularity" the facts upon which this claim rests. *See* Fed.R.Civ.P. 9(b); *New England Data Services, Inc. v. Becher,* 829 F.2d 286, 289 (1st Cir.1987). Nor, for that matter, does the complaint use the word "fraud."

6. *The "estoppel" claim.* Betancourt also appears to say that he has asserted a claim for a *different* misrepresentation, which took place when the defendant told him in 1982 that the floor crack had been repaired. Betancourt believes that this second "misrepresentation" is responsible for his failure to file a court action within the statutory time limit, and therefore argues that the defendant was "estopped" from raising the statute of limitations as a defense. *See Velilla v. Pueblo Supermarkets, Inc.,* 111 D.P.R. 732, 736 (1981) (official translation) (defendant who misled plaintiff into believing defendant was represented by insurance adjuster could not later assert defense of statute of limitations). Betancourt's opposition to the motion for summary judgment, however, does not refer to evidence in support of this claim that is sufficient to support a finding of estoppel. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rely on mere allegations but must present significant probative evidence to support his complaint); *cf. Clauson v. Smith,* 823 F.2d 660, 662–63 (1st Cir.1987) (upholding dismissal of claim where plaintiff had presented no evidence of deceptive conduct or reliance that would estop defendant from asserting statute of limitations defense).

■ 7. *The "waiver of defense" claim.* Betancourt says that the defendant was barred from raising the statute of limitations defense by a district court order requiring it to file any such dispositive motion by February 6, 1987 (prior to the date it was actually filed). The Federal Rules, however, state that a pretrial order "shall control the subsequent course of the action *unless modified by a subsequent order."* Fed.R.Civ.P. 16(e) (emphasis added). In this case, as the district court pointed out, the magistrate, in effect, extended the filing deadline by a subsequent order. Consequently, we reject Betancourt's argument.

For these reasons the judgment of the district court is

*Affirmed.*