# United States Court of Appeals

## For the First Circuit

Nos. 05-1737, 05-1831

LOCKHEED MARTIN CORPORATION, individually, doing business as,
and acting by and through "Lockheed Martin Missiles & Space"
and "Sanders, A Lockheed Martin Company",

Plaintiff, Appellant,

v.

RFI SUPPLY, INC., formerly known as RFI Communications &
Security Systems; GRINNELL CORPORATION, doing business as
Grinnell Fire Protection Systems Company; KIDDE-FENWAL, INC.,

Defendants,

RANTEC POWER SYSTEMS, INC.,

Defendant/Third-Party Plaintiff, Appellee/Cross-Appellant,

v.

FACTORY MUTUAL RESEARCH CORPORATION;
FACTORY MUTUAL INSURANCE COMPANY,

Third-Party Defendants, Cross-Appellees,

STAR SPRINKLER, INC.; ALLENDALE MUTUAL INSURANCE COMPANY,

Third-Party Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Torruella, Circuit Judge,
Campbell, Senior Circuit Judge,
and Lipez, Circuit Judge.

Randy W. Gimple, with whom Carlson, Calladine & Peterson, LLP were on brief, for appellant.

Patrick J. Hagan, with whom J. Cross Creason, Dillingham & Murphy, LLP, Richard B. Kirby and Keegan, Werlin & Pabian, LLP were on brief, for appellee/cross-appellant Rantec Power Systems, Inc.

Jonathan D. Mutch, with whom James S. Harrington and Robins, Kaplan, Miller & Ciresi, LLP were on brief, for cross-appellees Factory Mutual Research Corp. and Factory Mutual Insurance Company.

March 17, 2006

**TORRUELLA**, **Circuit Judge**.  This case involves three parties: Plaintiff Lockheed Martin Corporation ("Lockheed"), Defendant Rantec Power Systems, Inc. ("Rantec"), and Third-Party Defendants Factory Mutual Research Corporation ("FMRC") and Factory Mutual Insurance Corporation (collectively, the "FM Entities").  Lockheed appeals the district court's grant of Rantec's motion for summary judgment against Lockheed.  Rantec, in turn, appeals the district court's grant of the FM Entities' motion for summary judgment against Rantec.  We affirm the district court's grant of Rantec's motion for summary judgment against Lockheed and do not reach the district court's grant of the FM Entities' motion for summary judgment against Rantec.[1]

## I.  Factual Background and Procedural History

### A.  Lockheed and Rantec

Lockheed is an advanced technology company incorporated in Maryland that also has its principal place of business in Maryland.  Rantec is a Delaware corporation with its principal place of business in Missouri.  Rantec designs and constructs anechoic chambers.[2]  On April 15, 1992, Lockheed and Rantec entered

---

[1]  At oral argument, counsel for Rantec stated that Rantec would withdraw its appeal regarding the grant of summary judgment in favor of the FM Entities if we affirmed the grant of summary judgment as to Lockheed's claims.  Because we affirm that portion of the district court's opinion, we do not reach Rantec's appeal.

[2]  An anechoic chamber is a steel shielded room padded with foam material to absorb light and sound.  These chambers are used by Lockheed to test antenna signals for aerospace and military

-3-

into a written contract in which Rantec agreed to design and construct an anechoic chamber at a Lockheed facility in Merrimack, New Hampshire. As part of the contract, Rantec was required to "design, fabricate, and install a fire detection and sprinkler system" in the chamber. The contract contained a warranty clause providing that "[a]ll equipment and workmanship shall be guaranteed to be free from defects by [Rantec] for a period of one (1) year after final acceptance, unless a different warranty is specified." Rantec completed construction of the chamber in late 1992, and final acceptance occurred in 1993.

The fire detection system consisted of, inter alia, smoke detectors, fire alarms, valves, telescoping sprinkler assemblies ("TSAs"), and sprinkler heads. The TSAs were retracted above and outside the chamber and were designed to extend into the chamber when the detection system identified smoke or fire but not immediately release water. Once the temperature exceeded a certain level, a fusible link incorporated in the sprinkler head would melt and water would be released into the chamber.

The present case stems from two incidents involving flooding of Lockheed anechoic chambers. In December 1996, an anechoic chamber at a Lockheed facility in California suffered water damage when three of the TSAs broke and water flooded the chamber. On March 27, 1997, the sprinkler system at the anechoic

applications.

-4-

chamber in New Hampshire malfunctioned. The fire suppression system activated due to a defect in an electronic panel sold and installed by another contractor not party to this suit. The TSAs extended and some of the sprinkler heads broke and released a large amount of water into the chamber. The foam and sub-flooring of the chamber suffered $400,000 of damage. According to Lockheed, also damaged by the flood were a pedestal and positioning system costing over $160,000. These items were not provided under the contract with Rantec. Lockheed did not include these items in its complaint and did not amend its complaint to add these items.[3]

On December 20, 1999, Lockheed brought suit against Rantec in the United States District Court for the Northern District of California,[4] alleging claims stemming from the incidents in California and New Hampshire. On August 29, 2000, the district court in California severed Lockheed's New Hampshire claims, and the parties then stipulated to transfer the New Hampshire claims to the United States District Court for the District of Massachusetts. Lockheed raised the following claims regarding the New Hampshire events: (1) negligence, (2) strict liability, and (3) implied warranties.

---

[3]  A reading of Lockheed's complaint shows that it claimed damages only to the anechoic foam and sub-flooring in the chamber, as well as to the sprinkler assemblies.

[4]  The court had diversity jurisdiction under 28 U.S.C. § 1332. All of Lockheed's claims involved state law.

## B. Rantec and the FM Entities

FMRC performs testing, issues product standards, and publishes a directory of "FM Approved" products for use in fire suppression systems. Rantec's claims against the FM Entities stemmed from FMRC's approval of Rantec's TSAs on the condition that they be equipped with certain sprinkler heads -- the sprinkler heads that broke when the TSAs extended into Lockheed's anechoic chamber. After Lockheed sued Rantec, Rantec moved to add the FM Entities as Third-Party Defendants pursuant to Rule 14(a) of the Federal Rules of Civil Procedure. In their briefs, Rantec and the FM Entities dispute when Rantec filed its Third-Party complaint against the FM Entities. Because we are not reaching Rantec's appeal regarding the grant of summary judgment in favor of the FM Entities, we do not address this issue.

## C. Proceedings Below

On April 12, 2001, Rantec moved for summary judgment against Lockheed. The district court denied this motion on June 6, 2001. On September 30, 2003, the court stayed all further proceedings pending resolution of the California litigation. The district court reopened litigation on December 9, 2004. Rantec re-filed its motion for summary judgment against Lockheed, and the FM Entities moved for summary judgment against Rantec. On April 20, 2005, the district court granted Rantec's motion for summary judgment against Lockheed and granted the FM Entities' motion for

summary judgment against Rantec.  Regarding Lockheed's claims against Rantec, the district court found that the economic loss doctrine barred Lockheed's tort claims and that the implied warranties' claims were barred by the statute of limitations. Lockheed appealed on May 17, 2005.  Rantec appealed on May 31, 2005.

## II.  Discussion

### A.  Standard of Review

"We review a district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmovant."  Uncle Henry's, Inc. v. Plaut Consulting Co., 399 F.3d 33, 41 (1st Cir. 2005).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  We may affirm a district court's grant of summary judgment on any basis apparent in the record.  Uncle Henry's, 399 F.3d at 41.

### B.  Lockheed's Tort Claims

The parties agree that New Hampshire law governs this case.  The district court found that, under New Hampshire law, Lockheed's tort claims were barred by what is known as the economic loss rule.  Under the economic loss rule, a party generally may not

recover in tort for "economic loss." We begin by discussing how the New Hampshire courts have defined "economic loss" and applied the economic loss rule.

The New Hampshire Supreme Court has defined "economic loss" as "the diminution in the value of a product because it is inferior in quality," Ellis v. Robert C. Morris, Inc., 513 A.2d 951, 954 (N.H. 1986)(internal quotation marks omitted), overruled on other grounds by Lempke v. Dagenais, 547 A.2d 290, 297-98 (N.H. 1988), and "that loss resulting from the failure of the product to perform to the level expected by the buyer[, which] is commonly measured by the cost of repairing or replacing the product," Lempke, 547 A.2d at 296. The New Hampshire Supreme Court has also stated that "[w]hen a defective product accidentally causes harm to persons or property, the resulting harm is treated as personal injury or property damage. But when damage occurs to the inferior product itself . . . the harm is characterized as economic loss." Ellis, 513 A.2d at 954.[5] The New Hampshire Supreme Court has also noted that "[i]t is clear that the majority of courts do not allow economic loss recovery in tort, but that economic loss is recoverable in contract," Lempke, 547 A.2d at 296, and that a party usually may not recover damages for economic loss via a tort claim. See Border Brook Terrace Condo. Ass'n v. Gladstone, 622

---

[5] As we will discuss below, the New Hampshire Supreme Court has recently clarified this statement in Kelleher v. Marvin Lumber and Cedar Co., -- A.2d --, 2005 WL 3429739 (N.H. Dec. 15, 2005).

A.2d 1248, 1253 (N.H. 1993). The district court found that the flooding was caused by a malfunction of the anechoic chamber and that the only thing damaged was the chamber itself. The district court therefore concluded that Lockheed suffered only economic loss and could not recover on its negligence or strict liability claims.

Lockheed argues that, under New Hampshire law, the economic loss rule does not bar tort actions where a defect "actually poses an affirmative risk of harm to persons or property." Lockheed would have us look to how the damage occurred and, if we find that the defect or accident posed an affirmative risk to persons or property, find that its tort claims are not barred by the economic loss rule.[6] However, we see nothing in the New Hampshire cases dealing with economic loss indicating that, when determining whether or not loss is economic, the New Hampshire courts would inquire into the risk posed by an accident or defect in a product. Instead, the New Hampshire cases are clear that when a product harms only itself, the loss is economic and may not be recovered in tort. For example, in a recent New Hampshire Supreme Court case, the court stated that "'[w]hen a defective product

---

[6]  In making this argument, Lockheed states that its view is consistent with "that of the overwhelming majority of courts around the country." We disagree. As the United States Supreme Court noted in East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 868 (1986), the majority of courts have held that a party may not recover in tort when a product's malfunction damages only the product itself, regardless of the manner in which the damage occurred or the risk posed by the defect.

accidentally causes harm to persons or property [other than the defective product itself], the resulting harm is treated as personal injury or property damage.'" Kelleher v. Lumber --- A.2d ---, 2005 WL 3429739 at *12 (N.H. Dec. 15, 2005) (quoting Ellis, 513 A.2d at 954)(alteration in original)(emphasis added). The court went out of its way to add the phrase "other than the defective product itself," which was not present in Ellis. The implication of this statement is that, when a defective product accidentally causes harm to itself, that harm is not treated as personal injury or property damage but is instead treated as economic loss, which is not recoverable in tort. The New Hampshire Supreme Court has therefore clearly rejected the logic behind Lockheed's argument.

We also think that this approach comports with the policies behind several fundamental tenets of contract and tort law. Lockheed argues that the purpose of the economic loss doctrine is to distinguish between a product that fails to perform as promised and a product whose defect poses an actual risk of injury or damage, and that the dividing line between tort and contract should not hinge on the fortuity of what happened to be damaged. To our knowledge, the New Hampshire courts have not explicitly addressed these arguments. However, the United States Supreme Court has done so in East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986). In East River, an admiralty

case, the Court discussed the merits of the majority view of the economic loss doctrine -- that damage to a product caused by that product is economic loss and not recoverable in tort -- as well as the view argued by Lockheed -- that the economic loss doctrine should turn on the affirmative risk posed by the defective product. In rejecting the position advocated by Lockheed, the Court stated that such a position, "which essentially turn[s] on the degree of risk, [is] too indeterminate to enable manufacturers easily to structure their business behavior." Id. at 870. The Court also stated that

> [t]he distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the "luck" of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. When a product injures only itself the reasons for imposing tort duty are weak and those for leaving the party to its contractual remedies are strong.

Id. at 871 (citation and internal quotation marks omitted).[7] As the Court noted, "[e]ven when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the

---

[7] While the Court was not speaking about New Hampshire law, and its decision is therefore not controlling in this case, we think that its policy rationale applies in full force, especially considering our finding that New Hampshire has adopted the majority view of the economic loss doctrine.

failure of the purchaser to receive the benefit of its bargain -- traditionally the core concern of contract law."[8]  Id. at 870.

Further, Lockheed's position would eviscerate the line between tort and contract and would allow tort, in many ways, to swallow up contract law.  As the Supreme Court noted in East River, "[p]roducts liability grew out of a public policy judgment that people need more protection from dangerous products than is afforded by the law of warranty.  It is clear, however, that if this development were allowed to progress too far, contract law would drown in a sea of tort."  Id. at 866 (citation omitted). Lockheed's view would lead to just that result.  It would allow any party who suffered damage as a result of a product's malfunction to bring a tort claim by asserting that the malfunction occurred in a

---

[8]  Lockheed admits that if there had been a fire in the chamber but the sprinkler system failed to extinguish it, or if the sprinkler system had interfered with the chamber's ability to send or receive signals, then it would likely be barred by the economic loss doctrine because these situations would have involved a failure of the chamber to perform.  Lockheed attempts to distinguish these situations from the flooding of the chamber, arguing that the flooding had nothing to do with the chamber's ability to perform. However, we see no difference between the situations.  Part of the chamber's ability to perform was the fire suppression system's ability to extend the TSAs into the chamber if there was a fire but not release water until a certain temperature was reached.  Here, there were two failures to perform: (1) the sprinklers descended into the chamber when there was not a fire, and (2) the sprinklers released water into the chamber even though there was no fire. This latter occurrence was, in many ways, a failure of the sprinkler system to perform one of its most basic functions -- to not release water into the chamber simply because the TSAs had been deployed.  We therefore reject Lockheed's attempts to distinguish the present situation from other situations where it admits that there would be a failure of performance.

-12-

way that might have harmed another person or property, regardless of whether any other person or property was actually harmed. We think the better approach is to look at what in fact happened, not what could have happened.

In sum, it is clear from the New Hampshire cases, especially Kelleher, the New Hampshire Supreme Court's most recent case regarding the economic loss rule, that New Hampshire has adopted the majority view of the economic loss rule which the Supreme Court discussed in East River. Therefore, if the flooding caused by the allegedly defective sprinkler systems damaged only the product itself, then the economic loss rule prohibits Lockheed from recovery on its tort claims.

We turn now to address whether the flooding damaged only the product itself. Lockheed makes two arguments regarding this issue. First, it argues that the fire suppression system and the anechoic chamber were different products, and that the defect in the fire suppression therefore damaged another product -- the anechoic chamber. However, as Rantec points out, the parties' contract for the anechoic chamber included the fire suppression system as a component part of the chamber, not a separate product. As part of the contract, the parties included a document entitled "Tapered Anechoic Chamber, Compact Range Chamber Technical Specification." Paragraph 1.0 of this document, entitled "Introduction," stated that "[t]his document provides specification

information for a tapered anechoic chamber . . . ."  Paragraph 2.0, entitled "Tapered Anechoic Chamber and Control Room," stated that "[t]he specification is for a tapered anechoic chamber to be used as a general purpose facility for RCS test and antenna pattern measurements . . . . The contractor will design, fabricate, and test the chamber, including all HVAC, fire detection and suppression" utilities.  From these provisions, it is clear that the fire suppression system was a component part of the anechoic chamber according to the technical specifications for the chamber agreed upon by the parties.  The anechoic chamber and fire suppression system are therefore properly regarded as a single unit.  As the Supreme Court noted in East River, "[s]ince all but the very simplest of machines have component parts, [a contrary] holding would require a finding of property damage in virtually every case where a product damages itself."  476 F.3d at 867 (internal quotation marks and citation omitted).

Lockheed's second argument is that there were in fact other items in the chamber when it was flooded: a pedestal and positioning system.  However, as Rantec points out, Lockheed never mentioned these items in its complaint and never amended its complaint to include these items.[9]  Lockheed attempts to get around

---

[9]  The district court rejected Lockheed's argument on the basis that Lockheed had failed to point to any evidence that the damage to this property exceeded $75,000.  Because we think the fact that Lockheed never mentioned this other property in its complaint is sufficient to dispose of its argument, we do not address this point

-14-

this issue by arguing that, under the Federal Rules of Civil Procedure's notice pleading standard, it was not required to itemize its damages in the complaint. Lockheed also argues that the complaint, fairly read, gave notice to Rantec that these other items were in the chamber. We disagree for several reasons. First, while the Federal Rules of Civil Procedure require only notice pleading, there is nothing in the complaint that would put Rantec on notice that Lockheed was claiming anything other than damage to the chamber itself. A review of the complaint reveals no mention of other items in the chamber. Instead, the complaint repeats several times that "plaintiff's anechoic chambers were doused with water and severely damaged." Lockheed also specified that the "anechoic foam and sub-flooring in the chamber" was damaged. Nothing in the complaint provides the slightest indication that there were other items in the chamber or that Lockheed suffered damage to anything other than the chamber itself. We see no reason to allow Lockheed to claim damage to other items when it never bothered to mention or even hint toward damage to anything beyond the anechoic chamber itself in the complaint.

Second, in reviewing the New Hampshire cases dealing with the economic loss doctrine, it is clear that the New Hampshire courts have looked to the complaint to determine whether the damages claimed by a plaintiff were economic loss. See Border

made by the district court.

<u>Brook Terrace Condo. Ass'n</u>, 622 A.2d at 1253 (looking to the "plaintiffs' writ" in determining whether plaintiffs suffered only economic loss); <u>Ellis</u>, 513 A.2d at 954 ("The plaintiffs' claim does not involve property damage <u>per se</u>. <u>Rather, the writ alleges</u> economic loss resulting from the defendant's failure to properly perform a contractual obligation.")(emphasis added).[10] Although it is not controlling under the Federal Rules of Civil Procedure, we find the approach of the New Hampshire courts instructive. Because Lockheed failed to give any indication in its complaint that it was alleging damage to anything other than the anechoic chamber, we will not consider alleged damage to the pedestal and positioning system in this appeal.

## C. Lockheed's Implied Warranties Claims

Lockheed also brought claims for breach of implied warranties under New Hampshire's Uniform Commercial Code ("UCC").[11] The district court assumed, <u>arguendo</u>, that the contract was

---

[10]  It is clear from the New Hampshire cases that a "writ" used in this context is synonymous with "complaint." <u>See</u>, <u>e.g.</u>, <u>Buckingham v. R.J. Reynolds Tobacco Co.</u>, 713 A.2d 381, 383 (N.H. 1998)("With regard to count I of the plaintiff's <u>writ</u>, we hold that the plaintiff has failed to state a claim upon which relief may be granted because the <u>complaint</u> does not allege that the product was 'defective' and 'unreasonably dangerous' as separate elements.") (emphasis added).

[11]  Lockheed could not bring any express warranty claims because the warranty in the contract was for one year and had long expired.

governed by the UCC.[12]  The court then found that the UCC's statute

of limitations -- codified as N.H. Rev. Stat. § 382-A:2-725

("Section 2-725") -- applied to Lockheed's claims.  Section 2-725

provides for a four-year statute of limitations commencing at the

time the cause of action accrues.  N.H. Rev. Stat. Ann. § 382-A:2-

725(1).  The statute also provides

> A cause of action accrues when the breach
> occurs, regardless of the aggrieved party's
> lack of knowledge of the breach.  A breach of
> warranty occurs when tender of delivery is
> made, except that where a warranty explicitly
> extends to future performance of the goods and
> discovery of the breach must await the time of
> such performance the cause of action accrues
> when the breach is or should have been
> discovered.

Id. § 382-A:2-725(2).

The district court found that Lockheed accepted the

chamber in 1993 and did not file its complaint until 1999.  The

court therefore found that Lockheed's claims were barred by the

statute of limitations.  The court, moreover, found no reason for

equitable tolling.

On appeal, Lockheed makes two arguments.  First, it

argues that the statute of limitations in Section 2-725 does not

apply to its case.  Alternatively, it argues that equitable tolling

---

[12]  Below, Rantec argued that the UCC did not apply to the contract
and that Lockheed could therefore not bring any claims under the
UCC.  The district court did not address this argument.  Rantec has
also made this argument before us, but we need not address it given
our disposition of Lockheed's implied warranties claims.  Like the
district court, we will assume, arguendo, that the UCC applies.

-17-

applies.  We address each argument in turn.  According to Lockheed,

the substance of its action "is not a malfunctioning of the

anechoic chamber, but rather, sudden flooding and resulting

property damage."  As a result, Lockheed argues, the substance of

this action is a tort claim for property damage and therefore the

applicable statute of limitations is found in N.H. Rev. Stat. Ann.

§ 508:4 ("Section 508:4"), which provides a three-year statute of

limitations for "personal actions."  Section 508:4 also explicitly

contains a discovery rule exception to the statute of limitations,

which is why Lockheed is attempting to persuade us that Section

508:4 applies.[13]

       We reject Lockheed's argument for two reasons.  First, in

its complaint, Lockheed brought tort claims and contract claims.

We have already disposed of Lockheed's tort claims, leaving only

the contract claim for implied warranties, and both the form and

substance of this claim appear to us to be a contract claim.

---

[13]  Section 508:4 states, in relevant part, that

> Except as otherwise provided by law, all personal
> actions, except actions for slander or libel, may be
> brought only within 3 years of the act or omission
> complained of, except that when the injury and its causal
> relationship to the act or omission were not discovered
> and could not reasonably have been discovered at the time
> of the act or omission, the action shall be commenced
> within 3 years of the time the plaintiff discovers, or in
> the exercise of reasonable diligence should have
> discovered, the injury and its causal relationship to the
> act or omission complained of.

N.H. Rev. Stat. Ann. § 508:4.

Further, given our discussion of the economic loss rule, it is clear that the damage Lockheed suffered was "the failure of the product to function properly[, which] is the essence of a warranty action . . . ." East River, 476 U.S. at 868. In other words, the substance of this action is a malfunctioning anechoic chamber, not "sudden flooding and resulting property damage" as Lockheed claims. Given this, we see no reason to allow Lockheed to convert its contract claim for implied warranty into a tort claim. Second, all of the cases involving a warranty claim brought under New Hampshire's UCC have used Section 2-725's statute of limitations. See Gagnon v. G.D. Searle & Co., 889 F.2d 340, 343 (1st Cir. 1989) ("The statute of limitations applicable to [appellant's] breach of warranty claim requires that an action be commenced 'within four years after the cause of action has accrued.'")(quoting N.H. Rev. Stat. Ann. § 382-A:2-725(1)); Pub. Serv. Co. of New Hampshire v. Westinghouse Elec. Corp., 685 F. Supp. 1281, 1284 (D.N.H. 1988) ("Actions for breach of implied warranties are also subject to the UCC four-year statute of limitations . . . ."); Morrissette v. Sears, Roebuck & Co., 322 A.2d 7, 11-12 (N.H. 1974).[14] We therefore

_____

[14] We do not find Lockheed's attempts to distinguish these cases persuasive. For example, Lockheed argues that in Gagnon, we held that "both the then-six year statute of limitations under N.H. Rev. Stat. Ann. § 508:4 and the four year statute of limitations under N.H. Rev. Stat. Ann. 382-A:2-725 had expired" before the suit was brought, and we therefore did not consider which limitations period applied. However, this argument ignores the fact that in Gagnon, we explicitly divided the plaintiff's claims into tort claims and warranty claims. For the tort claims, we stated that Section 508:4

find that Lockheed's implied warranties claims brought under the UCC are subject to the UCC's statute of limitations.

Lockheed's second argument is that, even if we apply Section 2-725's limitations period, equitable tolling should apply. The district court rejected this argument, finding no evidence sufficient to create a genuine issue as to whether equitable tolling should apply. We agree. Lockheed notes that Section 382-A:725(4) states that the UCC statute of limitations "does not alter the law on tolling of the statute of limitations . . . ." It also notes that the New Hampshire Supreme Court has recently recognized equitable tolling in other contexts and that equitable tolling should apply here.[15] See Portsmouth Country Club v. Town of Greenland, 883 A.2d 298, 304 (N.H. 2005). However, Portsmouth Country Club involved a tax abatement proceeding with a different statute of limitations, not an implied warranty claim governed by Section 2-725's statute of limitations. Given the fact that the

_____

applied, Gagnon, 889 F.2d at 342, and for the warranty claims, we specifically stated that Section 2-725 applied, id. at 343.

[15] Lockheed's argument is somewhat confusing in that it sometimes appears to conflate equitable tolling and the discovery rule. For example, in arguing for equitable tolling, Lockheed states that "the New Hampshire legislature has specifically endorsed and codified the discovery rule, a form of equitable tolling, for appropriate actions." While related, equitable tolling and the discovery rule are distinct doctrines. Further, while New Hampshire has adopted the discovery rule for tort actions covered by Section 508:4, it has recently rejected a discovery rule exception for implied warranty claims governed by Section 2-725. See Kelleher, 2005 WL 3429739, at *27.

New Hampshire Supreme Court has recently stated that the discovery rule is not applicable in implied warranties claims governed by Section 2-725, it is likely that court would also find that equitable tolling is inapplicable, especially considering Section 2-725's statement that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." N.H. Rev. Stat. Ann. § 382-A:2-725(2). Morever, even if the New Hampshire Supreme Court were to allow equitable tolling for certain claims governed by Section 2-725, such relief is unavailable here. Portsmouth Country Club noted that equitable tolling "is typically available only if the claimant was prevented in some extraordinary way from exercising his or her rights . . . . It applies principally if the plaintiff is actively misled by the defendant about the cause of action." 883 A.2d at 304 (emphasis added)(citation and internal quotation marks omitted). Here, Lockheed has not even attempted to argue that it was actively misled by Rantec about its cause of action. Further, we see nothing extraordinary about what happened. This is a case of a party who received a product that malfunctioned several years after purchase. Such cases occur all the time, and we see no reason to apply the rarely used doctrine of equitable tolling to Lockheed's case. We therefore find that Lockheed's implied warranties' claims are barred by the four-year statute of limitations period in Section 2-725.

## III. **<u>Conclusion</u>**

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Rantec as to Lockheed's claims. Rantec's appeal regarding the district court's grant of summary judgment in favor of the FM Entities is withdrawn.

**<u>Affirmed</u>**.