# United States Court of Appeals
## For the First Circuit

No. 05-2501

ISLA NENA AIR SERVICES, INC.;
SAN JUAN JET CHARTER, INC.,

Plaintiffs, Appellants,

v.

CESSNA AIRCRAFT COMPANY;
PRATT & WHITNEY CANADA CORP.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Raymond L. Acosta, U.S. Senior District Judge]

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Hansen,[*] Senior Circuit Judge.

Lawrence D. Goodman, with whom Luis Del Valle-Emmanuelli, García & Fernández Law Office, Juan A. López-Conway, and Devine Goodman Pallot & Wells, P.A. were on brief, for appellants.
James M. Derr, with whom Bruce J. McGiverin were on brief, for appellee Cessna Aircraft Company.
Kathleen M. O'Connor, with whom Thornton, Davis & Fein, P.A., A.J. Bennazar-Zequeira, José R. García-Pérez and Bufete Bennazar, C.S.P. were on brief, for appellee Pratt & Whitney Canada Corp.

May 31, 2006

[*]  Of the Eighth Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  Plaintiffs-Appellants Isla Nena Air Services, Inc. and its successor in interest San Juan Jet Charter, Inc. (hereinafter "Isla Nena") brought suit against defendants-appellees Cessna Aircraft Company ("Cessna") and Pratt & Whitney Canada Corporation ("PWC") in the United States District Court for the District of Puerto Rico.  The complaint alleged claims arising from an airplane crash near Culebra, an island municipality of Puerto Rico.  Isla Nena now appeals from the district court's dismissal of its complaint for failure to state a claim upon which relief may be granted.  After careful review, we affirm the judgment of the district court.

## I.

Isla Nena is a Puerto Rico corporation that operates a short-haul commercial airline in Puerto Rico.  Cessna is a Kansas corporation that designs, manufactures, and sells aircraft.  PWC is a Canadian corporation that designs, manufactures, and sells aircraft engines.  On November 26, 2001, Isla Nena purchased a new Cessna 208B (the "Aircraft") from Cessna and took delivery at Cessna's factory delivery center in Wichita, Kansas.  The Aircraft was powered by a PWC engine.

On August 30, 2003, the Aircraft was carrying nine passengers and a pilot from Fajardo, a city on the northeast coast of Puerto Rico, to Culebra, an island municipality of Puerto Rico approximately twenty miles east of Fajardo.  About five miles west

of the Culebra airport at an altitude of 2500 feet, in clear weather, the engine failed and the Aircraft lost power. The pilot was able to glide the Aircraft toward Flamenco Beach near Culebra and performed a controlled emergency water landing just off the beach. Following the landing, the pilot assisted all of the passengers -- none of whom were seriously injured -- to shore. The Aircraft suffered major damage to all of its components and the engine was destroyed.

After the accident, the National Transportation Safety Board ("NTSB") conducted an investigation. The NTSB determined that certain rivets installed around an engine inlet duct were either fractured or corroded. After the NTSB examined the engine, it was shipped back to PWC. PWC examined the engine's component parts and found that the damage to the engine was consistent with ingestion of a foreign object. Isla Nena's theory is that the rivets were defectively designed or installed, causing them to break off, and that the rest of the engine failed when it ingested one of the broken rivets.

On September 20, 2004, Isla Nena filed a six-count complaint against Cessna and PWC[1] in the United States District Court for the District of Puerto Rico. The complaint asserted diversity jurisdiction and contained claims for strict liability

---

[1] The complaint also alleged as defendants a John Doe, Jane Doe, River Doe, and Insurance Companies A, B, and C.

(Counts I and II) and negligence (Counts III and IV).[2] The complaint sought to recover damages for loss of value to the Aircraft and engine, cost to repair the Aircraft and engine, loss of use of the Aircraft, and lost profits.

On November 12, 2004, PWC filed a motion to dismiss Counts I-IV pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Cessna joined the motion. The motion argued that, despite the fact that the complaint asserted diversity jurisdiction, federal admiralty jurisdiction and substantive admiralty law applied. Federal admiralty law has adopted the "economic loss rule." Under the economic loss rule as articulated by the United States Supreme Court, a party generally may not recover damages in tort if a defective product damages only itself. See E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 876 (1986). Because the Aircraft damaged only itself, the motion argued that Isla Nena's claims were barred by the economic loss rule. In the alternative, the motion argued that Puerto Rico substantive law would also apply the economic loss rule.[3] Isla Nena opposed the motion, arguing that admiralty jurisdiction did

---

[2] The complaint also asserted a direct claim against Insurance Companies A, B, and C (Count V), and a claim for indemnity for any claims brought by the Aircraft's passengers (Count VI). Neither count is part of this appeal.

[3] The parties do not appear to dispute whether Isla Nena has claimed damages for only economic loss -- that is, to the Aircraft itself.

-4-

not apply and that the economic loss rule did not apply under Puerto Rico law. In January 2005, the parties filed replies and sur-replies. On March 16, 2005, an initial scheduling conference was held and the issues raised in the motions were discussed. Simultaneous supplemental briefs were filed on April 11, 2005, and simultaneous supplemental responses were filed on April 22, 2005. On July 11, 2005, Isla Nena filed a motion for leave to supplement the record, arguing for the first time that, even if federal admiralty jurisdiction applied, under the Puerto Rico Dock and Harbor Act the court was bound to apply Puerto Rico law.

On August 9, 2005, the district court granted the motion to dismiss. The court found that admiralty jurisdiction applied and therefore that Isla Nena's tort claims were barred by the economic loss rule. The court also found that, even if Puerto Rico law applied, the result would be the same because Puerto Rico law would follow the economic loss rule. Finally, the court denied Isla Nena's motion to supplement but stated that, even if it were to allow the motion, the economic loss rule would still apply. The court therefore entered partial judgment with respect to Counts I-IV. Thereafter, Isla Nena agreed to drop Counts V and VI, and the partial judgment was modified to a final judgment on August 30, 2005. Isla Nena has timely appealed.

## A.  Standard of Review

We review a district court's decision to grant a Rule 12(b)(6) motion to dismiss de novo, taking as true the well-pleaded facts in the complaint.  Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 69 (1st Cir. 2005).

## B.  The Economic Loss Rule

Under the economic loss rule, a party generally may not recover in tort when a defective product harms only the product itself (instead of a person or other property).  See, e.g., East River, 476 U.S. at 867-68; Lockheed Martin Corp. v. RFI Supply, Inc., 440 F.3d 549, 552-53 (1st Cir. 2006) (applying New Hampshire law); Restatement (Third) of Torts: Prod. Liab. § 21, comment d (1998).  Under the formulation of the rule that the majority of courts have adopted, a party may not recover in tort "[e]ven when the harm to the product itself occurs through an abrupt, accident-like event."  East River, 476 U.S. at 870.

East River is an admiralty case; therefore, if we were to apply federal admiralty law, Isla Nena's claims would be barred by the economic loss rule, as it is undisputed that the defect in the Aircraft caused damage to the Aircraft and nothing else.  However, the instant case presents an unresolved question as to whether admiralty jurisdiction should apply, and the Supreme Court's precedents on this issue have not been entirely clear.  If the

economic loss rule applies under Puerto Rico law, we need not reach the question of admiralty jurisdiction and could leave that issue aside for the Court to clarify at a later date.  Because we find that Puerto Rico courts would apply the economic loss rule, we affirm the judgment of the district court and do not address whether admiralty jurisdiction should apply.

**C.  Puerto Rico Law and the Economic Loss Rule**

The Puerto Rico Supreme Court has not directly addressed whether the economic loss rule is applicable under Puerto Rico law. We therefore "look to analogous state court decisions, persuasive adjudications by courts of the states, learned treatises, and public policy considerations . . . in order to make an informed prophecy of how the Puerto Rico Supreme Court would rule." Pérez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 55 (1st Cir. 1998)(quoting Rodríquez-Surís v. Montesinos, 123 F.3d 10, 13 (1st Cir. 1997))(brackets and internal quotation marks omitted).

Article 1802 of Puerto Rico's Civil Code, 31 P.R. Laws Ann. § 5141, provides for a right of action stemming from a person's negligence.  Although neither Article 1802 nor any other provision of the Civil Code has explicitly incorporated the doctrine of strict liability, it is well-settled that Puerto Rico courts have adopted that doctrine under Article 1802.  See Guevara v. Dorsey Labs., Inc., 845 F.2d 364, 365 (1st Cir. 1988)(stating that, under Article 1802, "the Supreme Court of Puerto Rico has

-7-

developed a strict liability standard for manufacturers of defective products"); Rivera-Santana v. Superior Packaging, Inc., 132 P.R. Dec. 115, 126, 1992 P.R.-Eng. 754830, 1992 WL 754830 (1992). We begin by discussing Article 1802 and the economic loss rule.

### 1. **Article 1802 and the Economic Loss Rule**

Article 1802 provides that "[a] person who by an act or omission causes damage to another party through fault or negligence shall be obliged to repair the damage so done." 31 P.R. Laws Ann. § 5141. After careful consideration, we believe that the Puerto Rico Supreme Court would rule that the economic loss rule bars an action under Article 1802 where a defective product harms only itself.

We addressed an issue similar to the present one in Betancourt v. W.D. Schock Corp., 907 F.2d 1251 (1st Cir. 1990). In that case, a plaintiff found a serious defect in a sailboat he had purchased and sued the manufacturer. The plaintiff sued in both tort and contract under Puerto Rico law, seeking damages for his investment in the boat, upkeep of the boat, and alleged pain and mental anguish he suffered because the boat did not work properly. We held that the plaintiff could not assert a tort claim because "Puerto Rico's negligence statute, [31 P.R. Laws Ann. § 5141], does not apply in the context of a commercial transaction." Id. at 1255 (citing Stainless Steel & Metal Mfg. v. Sacal V.I., Inc., 452 F.

Supp. 1073, 1081 (D.P.R. 1978)); see also Nieves Domenech v. Dymax Corp., 952 F. Supp. 57, 65 (D.P.R. 1996). We also stated that the plaintiff could not re-label what was in essence a warranty action as a tort action. In support of this point, we quoted from East River:

> Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss . . . is essentially the failure of the purchaser to receive the benefit of its bargain . . . . [A] manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself.

Betancourt, 907 F.2d at 1255 (quoting East River, 476 U.S. at 870-72).

The instant case presents basically the same situation as Betancourt. However, Isla Nena argues that our decision in Betancourt misapprehended Puerto Rico law because Puerto Rico law "does not preclude claims for strict liability or negligence simply because a warranty claim is not available or not pursued." Isla Nena argues that, under the doctrine of concurrence of actions, a party may elect which cause of action to bring if the party has a choice between valid contract and tort claims. Isla Nena relies principally on two cases in support of its argument: Márquez v. Torres Campos, 111 P.R. Dec. 854 (1982) (official English translation: No. R-79-101, slip op. (P.R. Jan. 18, 1982)), and

-9-

Ramos Lozada v. Orientalist Rattan Furniture, Inc., 130 P.R. Dec. 712 (1992).[4]  We discuss each in turn.

In Márquez -- which we discussed in Betancourt -- the defendant sold the plaintiff cattle that had tuberculosis and failed to tell the plaintiff that the cattle had been quarantined. As a result, the plaintiff's farm was put under quarantine and the plaintiff suffered damage to other cattle and farm animals.  The plaintiff brought suit, and the defendant claimed that the suit was barred by a statute of limitations governing suits for hidden product defects.  The Puerto Rico Supreme Court ruled that "the action of warranty for hidden defects does not by itself exclude other actions that may lie under the special circumstances of the case."  Id. at 1094.  The court eventually held that the suit could be brought under a theory of contractual deceit, as opposed to warranty, and that a longer limitation period applied.  In support of this holding, the court emphasized that

> plaintiff's cause of action arises, not from the objective fact of the defect in the object of the contract, which is what gives life to an action of warranty, but from a subjective circumstance provoked by the defendant's deceitful action which resulted in damages that go beyond the defect in the object of the contract and which is thus outside the frame of the concept of warranty.

---

[4]  Although Ramos Lozada has not yet been included in the Official Translations of the Opinions of the Supreme Court of Puerto Rico, the parties have provided an official English translation.  When we cite to specific pages of the case, we are referring to the pages of the translation provided by the parties.

<u>Id.</u> at 1105 (emphasis added). Unlike the plaintiff in <u>Márquez</u>, Isla Nena's claims rest solely upon "the objective fact of the defect in the object of the contract." <u>Id.</u> Further, the damages that resulted from the defect did <u>not</u> go beyond the defect in the object of the contract; they were limited to the product itself. In other words, the damages that Isla Nena seeks are squarely inside "the frame of the concept of warranty." <u>Id.</u> We thus find that <u>Márquez</u> is unhelpful to Isla Nena's case.

Isla Nena also argues that our holding in <u>Betancourt</u> has been undermined by <u>Ramos Lozada</u>, which was decided two years after <u>Betancourt</u>. In that case, some leased property was destroyed following a fire that was attributable to the lessee's negligence. The lessor sued under a theory of breach of contract (the lease agreement), which had a longer statute of limitations than an action under Article 1802. However, because the lessor's theory was that the fire was the result of the lessee's negligence, the trial court held that Article 1802 -- along with its statute of limitations -- applied and dismissed the action as untimely. On appeal, the Puerto Rico Supreme Court reversed. The court held that "a claim for noncontractual damages resulting from the breach of a contract lies if the act that caused the damage constitutes a breach of a general duty not to injure anyone and, at the same time, a breach of contract." <u>Ramos Lozada</u>, 130 P.R. Dec. 712 at *8. However, the court also emphasized that an action for breach

-11-

of contract only lies "when the damage suffered arises exclusively as a consequence of the breach of an obligation specifically agreed upon, which damage would not occur without the existence of a contract."  Id.

After careful consideration, we do not think that Ramos Lozada changes the result we reached in Betancourt.  We base this conclusion on several factors.  First, Ramos Lozada involved a lessor-lessee relationship.  It did not involve a commercial transaction, and we see nothing in the case to indicate that the Puerto Rico Supreme Court intended to replace the general rule that Article 1802 does not apply in commercial transactions.

Second, Ramos Lozada in no way implicated the economic loss rule, which is a rule peculiar to the law of products liability and applies only where a defective product harms itself.  Ramos Lozada holds only that if a party has valid claims stemming from both tort and contract, that party may choose under which theory to bring her claims.  However, the argument in this case is that Isla Nena does not have a valid tort claim due to the economic loss rule.  Ramos Lozada never addressed this particular point -- what it means to have a valid tort claim in the product liability context -- and for good reason, since the case involved a lessor-lessee relationship and did not implicate the economic loss rule.  In other words, in Ramos-Lozada, the injury arose not from a defect in the leased property but from the lessee's negligence.  There is

-12-

simply no indication that the Puerto Rico Supreme Court intended to apply Ramos Lozada in the products liability context or intended to make a pronouncement on the economic loss rule or our decision in Betancourt, even though it must have been aware of that decision.[5]

Third, Ramos-Lozada emphasized that a party may not choose whether to proceed in contract or tort "when the damage suffered exclusively arises as a consequence of the breach of an obligation specifically agreed upon, which damage would not occur without the existence of a contract." Id.; see also Nieves Domenech, 952 F. Supp. at 66 (explaining that, under Ramos Lozada, in order to bring a negligence claim based on a contractual relationship, the "general duty not to act negligently must arise out of conditions separate from the parties' contract. If a plaintiff's damages arise exclusively from a defendant's alleged breach of contract, the plaintiff does not have a separate cause of action for negligence") (emphasis added) (internal citations omitted). In the instant case, assuming Isla Nena's claims are true, the damage suffered -- harm to the product contracted for -- arose exclusively as a consequence of a breach of contract. Further, the damages would not have occurred without the existence

---

[5] If Isla Nena were arguing that the appellees' alleged negligence breached a contract or warranty and also caused damage to other property besides the defective product, Isla Nena would potentially have valid contract and tort claims and could, under the doctrine of concurrence of actions, choose whether to proceed in contract or tort.

-13-

of a contract. Therefore, even assuming that the Puerto Rico Supreme Court intended Ramos Lozada to apply in the present context, Isla Nena still would not have any valid claims under Article 1802.

We also think that application of the economic loss rule is in accord with the policies underlying contract and tort law, which the United States Supreme Court has extensively discussed in East River. Although East River is an admiralty case, and its decision is therefore not controlling in determining Puerto Rico law, we think the policy rationales explained by the Court logically apply to the decision we reach today. See Lockheed Martin, 440 F.3d at 553-54 (applying the policy rationales in East River to a case involving New Hampshire law after finding that New Hampshire had adopted the economic loss doctrine). First, the damages suffered by Isla Nena in this case are essentially those for which the law of warranty is best suited. In East River, the Court stated that, where a malfunctioning product harms only itself, "the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain -- traditionally the core concern of contract law." 476 U.S. at 870. Second, commercial transactions such as the one involved in this case "generally [do] not involve large disparities of bargaining power." Id. at 873. The law of warranty is therefore particularly well-suited to govern

such commercial controversies because "[t]he manufacturer can restrict its liability . . . by disclaiming warranties or limiting remedies. In exchange, the purchaser pays less for the product." Id. (internal citations omitted). We think this particular policy concern helps explain the general rule in Puerto Rico that Article 1802 does not apply in commercial transactions. Finally, the application of the economic loss rule in this context prevents the erasure of the line between tort law and contract law. As the Court explained, "[p]roducts liability grew out of a public policy judgment that people need more protection from dangerous products than is afforded by the law of warranty. It is clear, however, that if this development were allowed to progress too far, contract law would drown in a sea of tort." Id. at 866 (internal citations omitted).

In conclusion, we see nothing in Ramos Lozada to indicate an intention to set aside our holding in Betancourt or to provide for the application of Article 1802 in commercial transactions. Further, even if we were to read Ramos Lozada that broadly, it would be of no use to Isla Nena because the damages claimed arose entirely from the parties' contractual relationship and would not have occurred apart from the parties' contract. We therefore find that, under Puerto Rico law, Isla Nena's claims are barred by the economic loss rule. See Torres-Mas v. Carver Boat Corp., 233 F. Supp. 2d 253, 255-56 (D.P.R. 2002)(stating that, where plaintiff

-15-

alleged damages for defects in a boat, "[t]here are no allegations . . . regarding specific damages or injuries to plaintiff which would intimate either an action in torts or a products liability suit") (citing Betancourt, 907 F.2d at 1254).

## 2. **Strict Liability**

Although the previous section applies to both Isla Nena's negligence and strict liability claims, there are additional reasons -- that do not apply to Isla Nena's negligence claims -- to find that the economic loss rule bars Isla Nena's strict liability claims due to the history and evolution of the doctrine of strict liability in Puerto Rico. We address these briefly.

As we stated above, the doctrine of strict liability is found nowhere in Puerto Rico's Civil Code. Instead, the doctrine has been adopted by the Puerto Rico courts under principles flowing from Article 1802. Guevara, 845 F.2d at 365. In adopting the strict liability doctrine, the Puerto Rico courts have relied upon United States common law product liability principles "to fill a gap in our body of laws." Rivera-Santana, 132 P.R. Dec. at 126 n.4, 1992 P.R.-Eng. 754830 n.4.[6] In particular, the Puerto Rico

_____

[6] We have stated that "[t]he Supreme Court of Puerto Rico has made clear that the common law of the United States is not controlling, when filling gaps in the civil law system." See Guevara, 845 F.2d at 366. However, in Guevara we also noted that "when faced with a lack of authority, it may be appropriate to search for relevant principles in the common law." Id. (internal citations omitted). We then went on to state that "[s]ince the [Puerto Rico] Supreme Court has freely taken from common law decisions in developing the concept of strict liability, and since the principles we find there

-16-

Supreme Court has consistently relied upon the precedent of the California Supreme Court for its strict liability jurisprudence. Collazo-Santiago v. Toyota Motor Corp., 149 F.3d 23, 25 (1st Cir. 1998). We think this background provides additional reasons to find that the Puerto Rico courts would apply the economic loss rule to Isla Nena's strict liability claims.

First, one of the seminal cases setting forth the economic loss rule is from the California Supreme Court. In Seely v. White Motor Co., 403 P.2d 145, 150-51 (Cal. 1965), the California Supreme Court held that a party could not recover in tort -- under either negligence or strict liability theories -- if a defective product damaged only itself.[7] Since the Puerto Rico Supreme Court has borrowed much of its strict liability jurisprudence from the California Supreme Court, we think it likely that the court would also incorporate this portion of the California Supreme Court's strict liability jurisprudence. Second, it is undisputed that the vast majority of courts have adopted the economic loss rule in some form. See, e.g., Lockheed Martin Corp., 440 F.3d at 553 n.6 (noting that "the majority of courts have held

are useful and persuasive, we believe the Supreme Court of Puerto Rico would follow essentially the same path we follow today." Id. We follow that same course today.

[7] In East River, the United States Supreme Court cited to and discussed Seely with approval and also noted that Seely represented the majority view on the economic loss rule. East River, 476 U.S. at 868.

that a party may not recover in tort when a product's malfunction damages only the product itself"). Given the fact that the Puerto Rico Supreme Court has relied on United States common law in formulating its strict liability jurisprudence, we think it likely that the court would also adopt the majority view as to the economic loss rule.

In sum, the majority common law view, including the view of the California Supreme Court, is that a party may not recover in strict liability if a product's defect damages only the product itself. Given the Puerto Rico Supreme Court's general reliance on United States common law strict liability principles and its specific reliance on California Supreme Court precedent -- and absent any indication to the contrary -- we think it clear that the Puerto Rico Supreme Court would hold that the economic loss rule bars Isla Nena's strict liability claims.[8]

---

[8] Isla Nena cites to several cases that, it argues, indicate that the Puerto Rico courts would not adopt the economic loss rule in cases involving strict liability. These cases are easily distinguishable from the present case. For example, Isla Nena relies on In Re Dupont-Benlate Litig., 877 F. Supp. 779 (D.P.R. 1995). However, as appellees point out, that case did not involve a defective product causing injury only to itself. Rather, the case involved a claim that a defect in a fungicide caused damage to other property (plaintiffs' crops). Id. at 782. Thus, the district court's discussion of strict liability and "economic loss" is inapposite to the instant case because "economic loss" as used by the Dupont-Benlate court clearly referred to "injury to property besides the defective product," as opposed to "injury to the defective product itself."

**III.**

For the foregoing reasons, the judgment of the district court is **<u>affirmed</u>**.